DUNLAVY, Appellant, v. DAIRYLAND MUTUAL INSURANCE COMPANY and others, Respondents.

*September 30—October 29, 1963.*

For the appellant there were briefs by *Campbell, Brennan, Steil & Ryan* of Janesville, and oral argument by *James E. Brennan.*

For the respondents Dairyland Mutual Insurance Company and Otis L. Gobin there was a brief by *Smith, Rogers & Smith* of Fort Atkinson, and oral argument by *Donald L. Smith.*

For the respondent Hardware Dealers Mutual Fire Insurance Company there was a brief by *W. L. Jackman* and *Hart, Kraege, Jackman & Wightman* of Madison, and oral argument by *W. L. Jackman.*

For the respondent Farmers Insurance Exchange there was a brief by *Schlotthauer, Jenswold, Reed & Studt* of Madison, and oral argument by *John F. Jenswold.*

CURRIE, J. After reviewing the record in this appeal we reach these conclusions:

(1) The movants for new trial, with respect to the negligence issues, failed to fully comply with that part of sec. 270.50, Stats., which provides, "A motion for a new trial founded upon newly discovered evidence may be heard upon *affidavits* and the papers in the action." (Italics supplied.)

(2) There was no such failure to comply with such statutory requirement with respect to granting a new trial on the insurance coverage issues.

(3) This court on its own motion should grant a new trial in the interest of justice pursuant to sec. 251.09, Stats., with respect to the negligence issue.

The reasons for arriving at these conclusions are set forth below.

*Affidavit Requirement with Respect to Negligence Issues.*

Upon the original trial Dudley and his passengers testified that the Dudley car had come to a gradual stop on the highway because of mechanical trouble. Because of amnesia Dunlavy was unable to recall any of the facts surrounding the accident. Church and Miner similarly testified but Pearson, the other passenger in Church's car, was not called as a witness. There was no intimation in any of the testimony that any enmity had existed between the occupants of the Dudley and Church cars. Neither was there any testimony that some of the occupants of the Dudley car had advanced toward the Church car after the two cars stopped and threatened physical violence to Church and his two passengers. The evidence did disclose that all nine occupants of these two cars were in their late teens or early twenties and lived at Janesville. It would appear that Dunlavy was the oldest of the group, being twenty-three at the time of trial some seventeen months after the accident. On the evening of the accident the six persons in Dudley's car had visited two taverns where they had played cards and drunk beer. One tavern was in Fort Atkinson and one in Whitewater. Church and his two passengers had also been at one of these two taverns while Dudley and his companions were there, and had also played cards and drunk beer.

The showing made in behalf of the movants for a new trial was that Dudley, Church, and those of their passengers who had testified at the trial, other than Dunlavy, had committed perjury. This showing took the form of an affidavit by Church dated November 15, 1962; signed written state-

ments of Miner and Pearson dated December 2, 1962; and affidavits by Attorneys Jenswold and Jackman. Dunlavy's counsel contends that the Church affidavit is defective because it contains no venue or oath and omits the title of the officer in the jurat. The jurat affixed below Church's signature is as follows:

> "Subscribed and sworn to before me
> "this 15th day of November, 1962
> "County of Rock /s/ George E. Wood
> "My commission expires 1/31/1965."

By taking judicial notice of the records in the office of the secretary of state this court has ascertained that on November 15, 1962, George E. Wood was a duly commissioned notary public and that his commission expires January 31, 1965. While the first sentence in affidavits ordinarily recites that the affiant is swearing under oath, the absence of such recital does not necessarily render an affidavit fatally defective from the standpoint of compliance with sec. 270.50, Stats. The same is true with respect to the jurat's failure to specify the notary's venue. We consider that the statement in the jurat, "sworn to before me," in the absence of proof to the contrary, necessarily presumes that the notary duly administered the proper oath to the affiant.

Church's affidavit was witnessed by Leonard Alderson, a sergeant of the sheriff's department of Rock county and it states that it was voluntarily made to Alderson. Further material statements of the affidavit are these: After Church left the Whitewater tavern between 11:30 and 11:45 on the night of the accident he passed the Dudley car, which proceeded "to stay directly on my tail." Dudley tried to pass, but Church would not let him. At a stop sign in Milton, Dudley attempted to cut off the path of the Church car. Church succeeded in getting around the Dudley car, but just north of the point of accident Dudley succeeded in

passing Church. In the act of so doing, one of the passengers in Dudley's car threw a beer bottle which struck the left front door of the Church car. After passing, Dudley applied his brakes and stopped his car in the approximate center of the road, just over the crest of the hill, forcing Church to stop. A group of boys from the Dudley car then came toward the Church car. Two picked up gravel and threw it at the Church car. Church told Miner to lock the car door. Henning, one of the passengers in the Dudley car, swung his fist at one of the back windows. Threats were then made, such as "Get out of the car you sons-a-bitches," and "Get out of the car or we will kick the ——— out of both you and the car." Church tried to back up so he could turn around and get away, but before he could do so the Gobin car came and the accident occurred. After the accident and before trial Dudley and his friends made threats of physical violence, and Dudley talked to Church "to make sure that our stories were straight."

Miner's unsworn statement avers that it was voluntarily given to Sergeant Alderson and is in question and answer form. It corroborates much of Church's affidavit regarding what occurred up to the time of the accident. A summary of this statement commencing at the point where the accident had occurred is as follows: Dudley and some of his passengers threatened Church, Pearson, and Miner with closed fists, and "dictated" what information they were to give to the investigating officers, namely, that the Dudley car was off the road at the time of the accident and the occupants were outside the car urinating. Above all they were not to say anything about the fighting or attempt to fight. The following day, after Miner had given a statement to the sheriff's office, Dudley, Dominy, and another friend of Dudley's came to Miner's home. They inquired what had been asked of Miner at the sheriff's office and appeared to be pleased at what Miner had told the officers. They told

Miner to stick with that story. Miner was in fear of great bodily harm from Dudley and his group, and it was due to their threats that he had not previously told the officers the information he now claims to be true. Miner is still concerned that an attempt will occur to carry out the threats of bodily harm.

Pearson's signed statement was also given to Sergeant Alderson in question and answer form. It admits that a previous statement given by Pearson to the sheriff's department left out many details of the accident and in some respects was not true. It also largely corroborates Church's affidavit up to the point where the Church car stopped behind the Dudley car. Four of the passengers of the Dudley car, Powell, Dunlavy, Henning, and Rye, came back to the Church car, the doors of which had been locked. They told the occupants of the Church car to get out of the car, using profane language. When they started to kick the car, Church began to back up. The four then ran over to the shoulder of the road and threw handfuls of gravel and stones at the Church car. Pearson then remembers that the Church car swerved sharply across the road and the accident occurred. Afterward Dominy made the statement, "We'll kill you." One of the fellows from the Dudley car told those in the Church car what to say to the officers. Pearson also overheard the statement that someone was to contact Dunlavy's wife and advise her what to tell Dunlavy when he regained consciousness so that his story would match the others. The reason Pearson had not previously given this information was because of threats and fear of bodily harm.

The factual statements appearing in the affidavits by Jenswold and Jackman with respect to the facts which alleged to constitute newly discovered evidence are clearly hearsay. For this reason they afford no support to the order for new trial on the negligence issues.

This court has stated in several cases that an admission of a witness that he committed perjury upon the trial of a cause is not ground for a new trial based on newly discovered evidence. *Mickoleski v. Becker* (1948), 252 Wis. 307, 315, 31 N. W. (2d) 508; *Beck v. Wallmow* (1938), 226 Wis. 652, 659, 277 N. W. 705; and *Keeley v. Great Northern R. Co.* (1909), 139 Wis. 448, 454, 121 N. W. 167.[1] All of these cases rely upon the earlier case of *Loucheine v. Strouse* (1880), 49 Wis. 623, 6 N. W. 360, as authority for this announced rule. In the *Loucheine Case* the court stated that an affidavit of a witness, that he had committed perjury on the prior trial and would tell the truth on a new trial, was not sufficient basis for granting a new trial on the ground of newly discovered evidence because (p. 624):

"The evidence of this witness on another trial, in contradiction of his evidence on the same point on the original trial, would be entirely unreliable and not entitled to any weight without corroboration by some credible evidence also newly discovered, and would not, of itself alone, amount to newly discovered testimony."[2]

Thus the court clearly implied that a new trial may be based upon an admission of perjury if the facts in the affidavit are corroborated by other newly discovered evidence. This we consider to be the proper rule. We do not deem it necessary that all the facts stated to be the truth in the perjurer's affidavit must be corroborated by other newly

[1] The court in *Beck v. Wallmow, supra,* pointed out that it might be proper to grant a new trial in the interest of justice where it clearly appears that a material witness has testified falsely.

[2] It is probably incorrect to declare that the new facts stated in the affidavit, in contradiction to those the affiant testified to at the trial, do not constitute newly discovered evidence. A more-correct statement would be that they do not constitute newly discovered evidence which would probably produce a different result on a new trial.

discovered evidence in order to grant the new trial on this ground, but only that the corroboration extend to some material aspect thereof.

The trial court in its memorandum opinion held that the signed statement of Pearson, who had not testified at the trial, was sufficient corroboration of the material facts stated in Church's affidavit. We would agree if these corroborating facts had been presented to the court by affidavit, which they were not.

The controlling authority on this aspect of the case is to be found in the opinion of Mr. Chief Justice DIXON in *Dunbar v. Hollinshead* (1860), 10 Wis. 447 (*505), which also involved a motion for a new trial on the ground of newly discovered evidence. There the only affidavit in support of the motion for new trial stated that the affiant had disclosed to his counsel the facts he expected to prove by certain newly discovered witnesses. The court stated (p. 451 (*508)):

"The affidavit of newly discovered evidence is clearly insufficient. The party seeking a new trial on this ground must give the court the best evidence possible of the truth of the allegations. In order to do this he must produce the affidavits of the witnesses themselves, or satisfactorily show why he cannot do so. In this case no reason or excuse whatever for their nonproduction is offered. The strict observance of this rule is indispensable, in order to guard against unfounded applications."

In the instant case there was no showing made by affidavit why an affidavit could not be obtained from Pearson stating the facts which appear in his signed statement. If it were established that Pearson refused to make such an affidavit, then an affidavit should have been procured from Alderson identifying the Pearson statement and establishing how Alderson had obtained it from Pearson. Under sec. 270.50, Stats., it is mandatory that a motion for new trial

founded upon newly discovered evidence, when not supported by the papers in the action, must be supported by facts sworn to in a duly executed affidavit. Church's affidavit standing alone without corroboration was insufficient under the cited cases to support an order for new trial on the ground of newly discovered evidence. Pearson's statement, not being in affidavit form, cannot be resorted to for corroboration. Therefore, it was error for the trial court to have granted the new trial with respect to the negligence issue.

### *Affidavit Requirement with Respect to Insurance Coverage Issues.*

Neither of the two defendant insurance companies which insured the Dudley and Church automobiles interposed policy coverage defenses in their answers. Affidavits were made and filed by John F. Jenswold and W. L. Jackman, counsel respectively for Farmers Insurance and Hardware Dealers, in support of their motions for leave to amend their pleadings to assert coverage defenses, and for a new trial on the coverage issue. There are two affidavits each by Jenswold and Jackman, the Church affidavit and the signed statements of Miner and Pearson were attached to one of the Jenswold affidavits.

Among other things the Jenswold affidavit stated: The Church affidavit and the Miner and Pearson statements disclose that the prior statements given by Dudley and other witnesses to Farmers Insurance, testimony of parties given on adverse examination before trial, and testimony of parties and witnesses at the trial, were false. Some of these false statements and false testimony were the result of direct threats made by Dudley and others to Church, Miner, and Pearson. This information supplied to Farmers Insurance and particularly by Dudley represented a material falsification of the facts of the accident which resulted in prejudicing the defense of the action by Farmers Insurance. Such ac-

tions of Dudley constituted a breach of the insurance policy agreement which required Dudley to co-operate fully in presenting the true facts of the accident to Farmers Insurance and in the defense of the action.

A summary of the facts averred in the Jackman affidavits bearing on the coverage issue is as follows: Jackman was employed as counsel by Hardware Dealers to defend its insured Church in the action. Before the trial Jackman consulted with Church and asked him if he knew of any facts regarding the activities of Dunlavy, Dudley, or the other occupants of the Dudley car. Church then stated that all he knew was that he saw two boys get out of the Dudley car on the right side and did not know where they went. Jackman also had Church read over a prior written statement Church had given to an investigator and confirmed it was true, which statement was already part of the record of the trial. Church also had given testimony on an adverse examination, a copy of which was annexed to the affidavit and had given a statement to the sheriff's department on December 4, 1960, copy of which was also annexed to the affidavit. Jackman relied upon the truthfulness of such statements and testimony. At no time prior to judgment did Church or any of the other witnesses disclose that Dudley, or the occupants of his car, threatened violence or committed acts of violence just before the accident; that Dudley had stopped his car in order to stop Church; or any of the other acts or threats described in the Church affidavit attached to the motion papers of Farmers Insurance. The insurance policy issued by Hardware Dealers, which contained the usual co-operation clause, was quoted verbatim.

On the basis of the facts stated in the Jenswold and Jackman affidavits a good showing was made that Dudley and Church had breached the co-operation provisions of the policies of insurance covering the cars operated by them at the time of the accident, and that such breach was prejudicial to the two insurance companies. We are of the opinion

that this showing made by the Jenswold and Jackman affidavits, together with the Church affidavit, meets the five requirements which must be met before ordering a new trial for newly discovered evidence: (1) The new evidence was not discovered until after trial; (2) the party moving for a new trial must not have been negligent in seeking to discover such new evidence; (3) the new evidence must be material to the issue; (4) the new evidence must not be merely cumulative to testimony introduced at the trial; and (5) the new evidence must be such that it will be reasonably probable that a different result would be reached on a new trial. *Estate of Teasdale* (1953), 264 Wis. 1, 4, 58 N. W. (2d) 404. With respect to the second listed requirement, it was not necessary under the facts of this case that the affidavits aver in behalf of the two insurance companies that there was no negligence on their part in not discovering the new evidence before trial. The other facts established by the affidavits tend to negative any negligence, and none of the counteraffidavits in behalf of plaintiff Dunlavy show any lack of due diligence on the part of the two insurance companies, their attorneys, or agents.

We, therefore, conclude that there was no error nor abuse of discretion in permitting Farmers Insurance and Hardware Dealers to amend their pleadings so as to assert policy defenses and in granting a new trial with respect to such issues.

*New Trial in the Interest of Justice with Respect to Negligence Issues.*

Sec. 251.09, Stats., authorizes this court to grant a new trial where "it is probable that justice has for any reason miscarried." The trial court was precluded from granting a new trial in the interest of justice because the time within which it might so act, as prescribed by sec. 270.49 (1), had expired long before the motions for new trial were made.

This court is subjected to no such time limitation in so acting. Upon the entire record before us we are convinced that justice probably did miscarry at the trial because of perjured testimony and the suppression of material facts by witnesses, including defendants Church and Dudley. In order that a new trial be had with respect to the negligence issues it is not necessary to reverse any portion of the order appealed from. This is because no reasons for granting the new trial on the negligence issues are stated therein, such reasons having been set forth only in the memorandum opinion. Therefore, in affirming this portion of the order we do so by exercising our discretionary power under sec. 251.09 to grant a new trial in the interest of justice, and not upon any ground assigned by the trial court in its memorandum opinion.

*By the Court.*—The order appealed from is affirmed.