STATE, Respondent, vs. JOHNSON, Appellant.

*January 19—February 13, 1940.*

For the appellant there were briefs by *Stafford & Stafford* of Chippewa Falls and *Riley & Riley* of Eau Claire, and oral argument by *Malcolm Riley* and *Harold E. Stafford.*

For the respondent there was a brief by the *Attorney General, William A. Platz,* assistant attorney general, and *Connor Hansen,* district attorney of Eau Claire county, and oral argument by *Mr. Platz* and *Mr. Hansen.*

FAIRCHILD, J. The child's death was the result of one of several shots fired by the defendant. Of this there is no doubt. Such questions as are presented arise from the issues raised by the pleas interposed by the defendant, and which in substance are that he is not guilty because he was insane or feeble-minded at the time of the shooting, and consequently his mental condition was so impaired that he ought not to be held responsible for his acts.

It is the contention of counsel for defendant that knowledge of right and wrong as a test of responsibility was done away with by ch. 620, Laws of 1917, and that some new rule under which we are to determine the existence or nonexistence of "sanity or mental responsibility" of those who commit criminal acts was brought into being. By that chapter there was added to the section governing pleas of insanity the words "or feeble-minded." See sec. 357.11, Stats. Although the term "insanity" had been considered as broad enough to include all species of mental aberration or sickness of the mind, the distinction between insanity, idiocy, and feeble-mindedness existed, and had been frequently referred to in expert testimony when occasion required the examination into the condition of mind of a defendant. This suggested the advisability of definitely including within the scope of the criminal law relating to mental responsibility the condition more exactly described by the psychiatrists as "feeble-mindedness." It does not follow, however, that one of less mental caliber than another but still knowing the nature of his act and whether it is right or wrong is to be excused from responsibility therefor. The legislature by enacting that amendment did not lower the guard that is to protect society.

It extended, if it was not already so extended, the benevolent protection that the public must grant to the mentally sick. The purpose was to make surer the hospitalization of those who because of a lack of mental responsibility are dangerous to have at large. The learned trial judge in charging the jury in this case stated the law correctly in the following words: "In order that the plea of feeble-mindedness shall prevail the evidence must be sufficient to justify you in finding that at the time he fired the fatal shot which resulted in the death of the deceased that he did not have sufficient mental capacity to know the difference between right and wrong or the nature of the act which he was then doing."

The suggestion that the amendment was to bring the legal definition of insanity in keeping with modern thought may be a valid challenge to develop principles of certainty that will make improvement possible; but we must deal with things as they are, including the state of knowledge upon particular subjects. The gradual breaking down of the mind leading to the abnormal is not easily detected. The defendant in this case was released from the Mendota hospital in February, 1937. The crime with which he was charged was committed the following June. Had the wisdom of man been sufficient to foresee the train of events, some steps might have been taken to prevent the catastrophe. Success in crime prevention is dependent upon knowledge derived from experience; but even with all our modern enlightenment, it is not always possible to catch the hand before the blow is struck, nor is it possible to determine exactly the precise state of mind at the instant the striking occurs. The likelihood of error in diagnosing mental responsibility with a jury and detecting the true extent of the growth of mental disease or the development of mental incapacity is considerable, and it has resulted in rules designed to restrain the vicious which have been accepted by the courts of this state in the effort to deal justly with individuals and at the same time

protect society. There must be some reasonably definite and sensible line to indicate the division between that state of mind where responsibility must be present and the condition of insanity or feeble-mindedness where there is no responsibility. Whether the actor is vicious because he is willing to be, and his act is a result of his own creation, or whether it comes about because he is incapable of appreciating the nature of the act, presents a problem which the agencies of the law deal with under the rules provided, in cases in which the existence of mental responsibility is the prime issue. In *Jessner v. State*, 202 Wis. 184, 196, 231 N. W. 634, it was said: "The law finds correct expression in the statement that a person is insane 'when he has such an abnormal mental condition produced by any cause as renders him at the time of doing that act unable to distinguish between right and wrong in respect to that act.'" A man who does not exercise powers of, control possessed by him and assaults another performs a wilful act. The phrase "a depraved mind" as used in defining murder in the second degree carries the suggestion of an induced or self-created condition of mind, and is to be distinguished from a state of mind generally described as insanity or feeble-mindedness resulting from some disease or defect existing from birth or early childhood. That is the line of demarcation, and in the experience of mankind in attempting to prevent dangerous acts no way has yet been discovered of protecting ordinary people in their homes and on the street except by an adherence to this rule. Wise application of the rules usually results in proper adjustments. That one of weaker mentality is more likely to induce in himself a depraved state of mind than better-balanced individuals does not relieve him of responsibility for his acts. To alter this rule would not necessarily increase the protection to the insane individual, but it would be likely to result in opening an avenue of escape for the wicked and malicious. The ideal desired is the protection of people against acts emanating

from either source. The means used by the law lead away from the idea of vengeance and toward treatment calculated to prevent and protect. If the insane or feeble-minded who are dangerous can be discovered and treated in time, the innocent and unsuspecting may be afforded the protection it is desired to give them. The fear of punishment is expected to have a tendency to restrain others from transgression. The law does not interfere with the free movements of individuals until good reason exists for anticipation of harm coming from that individual. In the case of a criminal it is usually the act that first attracts public attention. It may happen that some insidious disease which is destroying one's mind will not manifest itself until some time after a vicious act has been committed, and the defendant has been adjudged responsible. There has been much concern over this problem. As a result efforts to create methods of treatment have been and are being made which are just to the individual, and which do not expose society to undue and unnecessary risks, and which at the same time are calculated to restrain one from criminal acts. The establishment of institutions for the treatment of the afflicted within our penal institutions is one of the results of these efforts. We quote from brief of counsel for the defendant : "The legislature has come to their rescue by investing authority in the state board of control to remove them from within the prison walls where the law courts send these unfortunates and transfer them to the central state hospital for the insane."

If the court is informed that a person informed against probably is insane or feeble-minded at the time of his trial, and thereby incapacitated to act for himself, "inquisition" is to be had, and if it shall be determined that such accused person is insane or feeble-minded, the trial shall be postponed indefinitely, and the court shall thereupon order that he be confined in the central state hospital for the insane or in an institution to be designated by the board of control until

recovery, when his trial shall be held. Sec. 357.13, Stats. But when the claim of present insanity is not advanced, and it is urged that the defendant is not guilty because insane at the time the offense was committed, the trial must proceed. If the defendant planned the act and executed it because he willed to harm his victim, it is his own act; but if due to insanity he acted under a belief that he was doing right and that the act was not wrong, he is not to be held responsible. The difficulties in reaching an exact and scientific analysis of the state of mind are illustrated in this case. He was in Mendota. He was released, and he killed the deceased. Those who knew him through years of association considered him harmless. At the trial the claim of insanity presently existing was not advanced.

Upon the trial the important question to be determined was whether the defendant was, at the time of the act, incapable of knowing the nature of his act, and whether it was right or wrong, and therefore not mentally responsible at the time of the commission of the offense. Testimony of experts who had examined the defendant was conflicting. Some were of the opinion that he was insane at the time the offense was committed, and others gave their opinion that he was not. The evidence showed that the defendant was of good stock, and was brought up comfortably by his grandparents. He elected to go to work after completing common school. Eventually he went into his brother's machine shop and became a competent machinist. He had always been a healthy, vigorous type of person, but at times appeared to be moody and irritable. He had a reputation of being quarrelsome when drinking and occasionally wore the evidence of brawls. There is evidence that he was experiencing some domestic difficulties. For some reason he disagreed with his brother, and on June 1, 1937, left his employment. He appears to have owned a rifle, to have had it available, and for the purpose of annoying or frightening his brother, he fired

the shots, one of which resulted in the death of Joyce Sorenson.

The jury reached the conclusion that the defendant understood the nature of his act and was responsible therefor. The learned trial judge approved of that finding and proceeded to dispose of the matter accordingly. We have examined the assignments of error and find no occasion for disturbing the rulings below. Should it eventuate that because of the nervous makeup of the defendant he becomes insane, and that the conduct disorder which he manifested resulted from a phase in the development of his mental deterioration, the law provides for proper treatment even after the conviction. There was an abundance of evidence on which to hold that at the time of the shooting the defendant was of such a mental state as to be responsible for his acts.

The insistence of the appellant that the information does not charge the offense of murder in the second degree is not well grounded. While in part of the information words are found which are customarily apt to be used in charging lesser offenses of homicide, nevertheless the charge embodies the language of the statute of murder in the second degree and fully advises the defendant of the charge against him. Sec. 355.33, Stats. His act of shooting into the screened porch of the home of his brother, toward the street where children were playing, which resulted in a death, places him within the definition fixed by statute of murder in the second degree. It was an act imminently dangerous to others, evincing a depraved mind regardless of human life, without a premeditated design to effect the death of the person killed.

Other assignments of error have been considered. No error appearing, the conviction must be sustained.

*By the Court.*—Judgment affirmed.