STATE, Respondent, v. DOLAN, Appellant.

*No. State 53. Argued September 5, 1969.—Decided September 30, 1969.*
(Also reported in 170 N. W. 2d 822.)

For the appellant there was a brief and oral argument by *Arthur F. Lubke, Jr.,* of Milwaukee.

For the respondent the cause was argued by *Theodore J. Hodan,* assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, and *E. Michael McCann,* district attorney.

HALLOWS, C. J.  About 11:30 in the evening of July 24, 1966, James Hering was standing in front of the bar of his tavern at 1556 North 36th Street, Milwaukee, Wisconsin. He was engaged in conversation with several friends at the bar when he saw a Mr. Hoff run into the tavern follwed by Don E. Dolan in hot pursuit with a butcher knife in his hand. Hoff ran back of Hering and behind the bar.

Hering attempted to calm Dolan but he poked Hering in the stomach with the butcher knife and told him to "butt out." Hering grabbed Dolan's hand and took the knife, but as he turned to go behind the bar, Dolan

struck him, knocking him to the floor. Dolan asked for the knife but Hering refused. Dolan then grabbed a paring knife lying nearby, thrust it against Hering's throat and said, "Give me my knife back or I will cut your throat." Hering responded to this threat by either giving Dolan the knife or allowing him to take it. Hoff then jumped over the bar and ran out the front door with Dolan again armed with the butcher knife in hot pursuit.

Dolan's story is that between 7 and 11:30 that evening he consumed 10 or 15 drinks of whiskey during a party in his home and was a little intoxicated. His wife became ill and Dolan asked Mr. and Mrs. Hoff, who lived downstairs, if they would watch his two-and-one-half-weeks-old baby while he went to call his mother-in-law. Shortly after returning to the house, Dolan noticed the baby was not in its crib. After questioning Hoff about the baby's whereabouts, an argument ensued during which Dolan grabbed the butcher knife from the stove and chased Hoff out of the house, down the street, and into the tavern.

Dolan claims the evidence might be sufficient to find him guilty of a violation of sec. 941.20 (1) (a), Stats., which makes it a misdemeanor to endanger another's safety by reckless conduct in the handling of a knife, but it is not sufficient to sustain a conviction for a violation of sec. 941.30,[1] which creates a felony and requires conduct imminently dangerous and evincing a depraved mind, regardless of human life. Dolan contends this section must be construed narrowly and requires a conscious attempt to inflict an injury which succeeds but does not produce great bodily harm or which fails for

---

[1] "941.30 **Endangering safety by conduct regardless of life.** Whoever endangers another's safety by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life, may be fined not more than $1,000 or imprisoned not more than 5 years or both."

reasons not within the control of the actor. It is argued it is the attempt with a deadly weapon which makes the conduct imminently dangerous and it is the intent to injure which evinces a depraved mind.

We do not agree with the argument that sec. 941.30, Stats., is an attempt statute for second-degree murder or with the implied argument that the facts sustain a conviction under sec. 941.20 (1) (a), and therefore cannot support a conviction under sec. 941.30. The real issue in this case is the proper construction of sec. 941.30. This section creates a separate crime of endangering a person's life by conduct which is of such a nature as normally would cause or be likely to cause or result in death and which is performed with the general intention to do harm without concern whether such harm would result in death; but it is not necessary that there be the specific intent to harm a particular person. Thus the conduct, including the instrumentality if one is used, must have the potentiality of causing death but such death may not be intended. The act of poking a knife in a man's stomach or holding a knife to his throat and threatening to cut him in order to force that person to do the will of the actor is not reckless conduct but rather conduct imminently dangerous and evincing a depraved mind. Dolan had the intent to harm Hering without caring for the consequences of his action even though those consequences might be death. If this were not so, Dolan would not have picked out a vital part of the body upon which to carry out his threat.

The court can think of only a few incidents of conduct more imminently dangerous to the life of a person than a knife at a vital part of his body in the hands of a threatening stranger. Such an act is not only conduct dangerous in and of itself but, coupled with the threat and stated intention to use the knife and with the ability to use it then and there, is imminently dangerous. To be imminently dangerous, there need be no slashing or other

movement with the knife. The threat to use such an instrumentality and the ability to use it immediately constitutes imminency. Imminency is more immediate in time than impending and more certain than the concept of threatening.

Dolan's acts also evince a depraved mind regardless of human life. In respect to this term, which is also used to define second-degree murder in sec. 940.02, Stats., we pointed out in *State v. Johnson* (1940), 233 Wis. 668, 672, 290 N. W. 159, the phrase "a depraved mind" did not mean insanity or feeblemindedness. We also pointed out in *Zenou v. State* (1958), 4 Wis. 2d 655, 668, 91 N. W. 2d 208, that such depravity is also present in first-degree murder and the intent is the same except for the absence of the design to effect death.

The elements of this crime are well stated in Criminal Instruction, Part II, 1345, which we approve.[2]

---

[2] **"1345 Endangering Safety by Conduct Regardless of Life.**

"Endangering safety by conduct regardless of life, as defined in section 941.30 of the Criminal Code of Wisconsin, is committed by one who '. . . endangers another's safety by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life. . . .'

"Before the defendant may be found guilty of endangering safety by conduct regardless of life, the State must prove by evidence which satisfies you beyond a reasonable doubt that there were present the following three elements of this offense:

"First, that the defendant's conduct was imminently dangerous to another;

"Second, that his conduct was of such a character that it evinced a depraved mind, regardless of human life;

"Third, that the defendant endangered the safety of another by such conduct.

"The first element of this offense requires that the defendant's conduct was imminently dangerous to another, that is, conduct dangerous in and of itself. It must have been conduct inherently and consciously dangerous to life and not such as might casually produce death by misadventure.

"The second element of this offense requires that the defendant's conduct was of such a character that it evinced a 'depraved mind regardless of human life.' 'Depraved mind regardless of human

Dolan claims his actions were not totally unjustified because he was in a highly disturbed state of mind over the whereabouts of his child and Hering was preventing him from getting that information from Hoff and therefore he did not have a depraved mind. We find no merit in this argument. There is no justification or excuse for Dolan's conduct toward Hering whatever one might say of the justification of his conduct toward Hoff. The crime spelled out in sec. 941.30, Stats., of endangering the safety of another is consistent with sec. 940.23, which makes causing great bodily harm to another a crime, and with sec. 941.20 (1) (a), creating a misdemeanor for endangering safety by reckless conduct.

We think sec. 941.30, Stats., is clear in its definition of the prohibited conduct and the facts in this case come within that definition and no error was committed by the trial court in so finding.

*By the Court.*—Judgment affirmed.

life' does not mean that the mind of the defendant must have been diseased or that he must have had a mental disorder generally described as insanity or feeblemindedness. The depravity of mind referred to exists when the conduct endangering the safety of another demonstrates an utter lack of concern for the life and safety of another and for which conduct there is no justification or excuse. It is not necessary that there be an intent to endanger the safety of another, but it is sufficient if the safety of another is endangered by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life.

"The third element of this offense requires that the defendant actually endangered the safety of another by his conduct imminently dangerous to another and evincing a depraved mind, regardless of human life.

"If you are satisfied beyond a reasonable doubt from the evidence in this case that the defendant endangered the safety of another by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life, then you should find the defendant *(guilty) (guilty of endangering safety by conduct regardless of life)* as charged in the information.

"If, however, you are not so satisfied, then you must find the defendant not guilty."