STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

David CANEDY, Defendant-Appellant.

Supreme Court

*No. 89-2132-CR. Submitted on briefs February 27, 1991.—Decided May 9, 1991.*

(Also reported in 469 N.W.2d 163.)

For the plaintiff-respondent-petitioner the cause was submitted on the briefs of *Thomas J. Balistreri,* assistant attorney general, with whom on the briefs was *Donald J. Hanaway,* attorney general.

For the defendant-appellant the cause was submitted on the brief of *Glenn L. Cushing,* assistant state public defender.

DAY, J. This is a review of an unpublished opinion of the court of appeals which reversed a judgment of the circuit court for Rock county, Honorable J. Richard Long, presiding. The circuit court denied defendant David Canedy's motion for withdrawal of his guilty plea to a charge of endangering safety by conduct regardless of life. It found that Canedy knowingly and voluntarily entered his plea and understood the nature and elements of the charge against him. Therefore, the circuit court held that Canedy failed to meet his burden of presenting a fair and just reason for setting aside his plea. The court of appeals reversed. It held that Canedy's "plausible" explanation of his confusion when he pled guilty and his assertion of innocence constituted a fair and just reason to allow him to withdraw his plea.

The issue on review is whether the circuit court abused its discretion in denying Canedy's motion to withdraw his guilty plea, because of Canedy's claim that at the time he entered the plea Canedy did not have a good recollection of the facts which were a basis of the charge and he misunderstood an element of the charge. We hold that the circuit court did not abuse its discretion in denying Canedy's motion to withdraw his plea. We therefore reverse the court of appeals.

On December 29, 1988, Canedy was charged as a habitual criminal with endangering safety by conduct regardless of life, while armed, contrary to secs. 941.30

and 939.63, Stats. 1985-86[1] and resisting an officer, contrary to sec. 946.41(1), Stats. 1985-86.[2] The charges stemmed from allegations that on December 27, 1988, Canedy, in the presence of police officers, held a knife to his wife's chest and threatened to cut her throat. In his struggle with his wife he cut her hand.

At the arraignment, on February 6, 1989, Canedy stood mute to the charges against him, and the court entered pleas of not guilty.

---

[1] **941.30 Endangering safety by conduct regardless of life.** Whoever endangers another's safety by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life, is guilty of a Class D felony.

**939.63 Penalties; use of a dangerous weapon.** (1)(a) If a person commits a crime while possessing, using or threatening to use a dangerous weapon, the maximum term of imprisonment prescribed by law for that crime may be increased as follows: . . .

**3.** If the maximum term of imprisonment for a felony is more than 2 years, but not more than 5 years, the maximum term of imprisonment for the felony may be increased by not more than 4 years.

(b) The increased penalty provided in this subsection does not apply if possessing, using or threatening to use a dangerous weapon is an essential element of the crime charged.

(c) This subsection applies only to crimes specified under chs. 161 and 939 to 948.

**(2)** Whoever is convicted of committing a felony while possessing, using or threatening to use a dangerous weapon shall be sentenced to a minimum term of years in prison, unless the sentencing court otherwise provides. The minimum term for the first application of this subsection is 3 years. The minimum term for any subsequent application of this subsection is 5 years. If the court places the person on probation or imposes a sentence less than the presumptive minimum sentence, it shall place its reasons for so doing on the record.

[2] **946.41 Resisting or obstructing officer. (1)** Whoever knowingly resists or obstructs an officer while such officer is doing any act in an official capacity and with lawful authority, is guilty of a Class A misdemeanor.

On March 23, 1989, Canedy entered into a plea agreement. He pled guilty to the charge of endangering safety, and the prosecutor withdrew the charge of resisting an officer and the repeater allegations. In conjunction with the plea, Canedy told the court that he was thirty-four years old; that he completed three years of college; that he had never been committed to a mental institution and was not suffering from any mental illness; and that he was not under the influence of drugs or alcohol.

The court informed Canedy of the rights he was giving up by pleading guilty. The court then inquired whether Canedy's plea was voluntary and was assured by the defendant that it was. The court then questioned defendant's attorney:

> THE COURT: Mr. Sanborn, are you satisfied that the defendant's plea of guilty in this case is not the result of any force or coercion of any kind that's been used upon him?
>
> MR. SANBORN: Yes, I'm so satisfied.
>
> THE COURT: Are you also satisfied that his plea of guilty is made knowingly by him and voluntarily by him?
>
> MR. SANBORN: Yes, I am.
>
> THE COURT: Are you also satisfied as his attorney that it is in his best interests that he does enter a plea of guilty to this charge?
>
> MR. SANBORN: Yes, I think so.

(Transcript of Proceedings, March 23, 1989, p. 16.)

Then the prosecutor, at the request of the court, summarized the facts which he was prepared to prove at trial:

**THE COURT:** Mr. Dumke, had this matter gone to trial, what would the State have been prepared to prove?

**MR. DUMKE:** Your Honor, Officers Dunkin and Pittman report that on December 27, 1988, shortly after midnight, they and other officers went to the Canedy residence at 115 Merrill in the City of Beloit, County of Rock and State of Wisconsin. The officers were informed that David Canedy had cut his wife, Sandy Canedy. Upon their arrival, they knocked repeatedly on the door but got no answer. They continually knocked. Finally the door was opened and Sandy Canedy appeared. The officers observed David Canedy come up behind Sandy Canedy with his right hand behind his back. When he reached her, he grabbed her around the neck and told the police that if they come any closer, he would kill Sandy. Sandy tried to get away and there was a scuffle with the knife. The knife was pointed at Sandy's chest with the pointed tip facing her chest. The officers drew weapons and told him to drop his—drop the knife. He refused to do so, told the officers to back off or he would cut her throat. At that period of time a struggle ensued. Sandy attempted to get away from David. Officer Pittman joined the scuffle. He continually struck Mr. Canedy with his baton trying to make him release Sandy or his grip on the knife. Eventually Sandy slipped from David's grasp, but he then grabbed her by the hair and held on to her and continued to struggle with the officers. Sandy indicated to the officers that they had been arguing—both Sandy and David Canedy had been arguing in the residence. He pulled out a knife and told her, it's all over, and that was sort of the straw that broke the camel's back. He then poked her in the arm with the knife and the struggle then ensued in which her hand was cut.

*Id.* at 16–17. Canedy did not deny any of the facts the State said it was prepared to prove. The court explained the charge against Canedy:

> **THE COURT:** First, there are three elements to this offense.
>
> **THE DEFENDANT:** Yes.
>
> **THE COURT:** First, that your conduct was imminently dangerous to another.
>
> **THE DEFENDANT:** Okay.
>
> **THE COURT:** And you stop me if I go too fast.
>
> **THE DEFENDANT:** Yes, sir.
>
> **THE COURT:** The first element of this offense requires that your conduct was imminently dangerous to another, that is, conduct dangerous in and of itself. It must have been conduct inherently and consciously dangerous to life and not such as might casually produce death by misadventure. That's the first element of the offense. Do you understand that?
>
> **THE DEFENDANT:** I do understand up to the part where you said consciously doing this, I guess. That's what—
>
> **THE COURT:** Well, it must be conduct inherently and consciously dangerous to life.
>
> **THE DEFENDANT:** That—
>
> **THE COURT:** In other words, it must be conduct that was in and of itself dangerous to the life of another person.
>
> **THE DEFENDANT:** Oh, okay.
>
> **THE COURT:** All right. And the second element of this offense requires that your conduct was of such a character that it evinced a depraved mind regard-

571

less of human life.[3] Depraved mind regardless of human life does not mean that your mind must have been diseased or that you must have had a mental disorder generally described as insanity or feeble-mindedness. The depravity of mind referred to exists when the conduct endangering the safety of the other demonstrated an utter lack of concern for the life and safety of the other and for which conduct there is no justification or excuse. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: And the third element of the offense requires that your conduct actually endangered the safety of the other by conduct imminently dangerous to another and evincing depraved mind regardless of human life. Now, realizing that those are the three elements of this offense, do you still wish to enter a plea of guilty to this charge?

THE DEFENDANT: Yes, I do.

THE COURT: Very well. Based upon the statements made to me by the Court, [sic] by Mr. Dumke, I find that there is a factual basis for the defendant's plea of guilty, and I also find from the statements of the defendant, and upon his plea of guilty, I will adjudge that he is guilty of the offense of endangering another's safety while armed, contrary to the provisions of Sections 941.30 and 939.63 of the Wisconsin Statutes, that offense having occurred on the 27th

---

[3]Section 941.30, Stats. 1985–86 which provided that the defendant's conduct must have evinced a "depraved mind" was repealed and recreated as sec. 941.30(1), Stats. by section 472zktb, 1987 Wis. Act 399. The new subsection, effective January 1, 1989 provides:

**941.30 Recklessly endangering safety. (1)** FIRST-DEGREE RECKLESSLY ENDANGERING SAFETY. Whoever recklessly endangers another's safety under circumstances which show utter disregard for human life is guilty of a Class D felony.

day of December, 1988, as alleged in Count 1 of the Information dated January 17th, 1989.

**MR. SANBORN:** Your Honor, may I make a statement here?

**THE COURT:** Yes.

**MR. SANBORN:** I don't know when the appropriate time is. I want this clear that this is David's decision to enter this plea. I know his wife does not want him to. She disagrees with his decision. She's here now today in the courtroom and—

**THE COURT:** Well, this is David's decision.

**MR. SANBORN:** No, no, I understand that but I—

**THE COURT:** And I've asked him whether or not this is being freely and voluntarily done.

**MR. SANBORN:** Uh-huh.

**THE COURT:** And I understand your answer to that is that this is your plea of guilty and you are doing it of your own free will and you are doing it freely and voluntarily; is that correct?

**THE DEFENDANT:** Yes, It was.

**THE COURT:** Very well. Then I think that's satisfactory. Is there anything else you want to say in that regard?

**MR. SANBORN:** I just—We've discussed this many times and I haven't urged him either way. I've told him that—that I felt that he probably would be found guilty, and I think that's a factor in his decision, but I don't know what would happen at trial.

**THE COURT:** Well—

**MR. SANBORN:** And I feel uncomfortable with this and—But I just want him to make up his own mind.

**THE COURT:** Well, my understanding is, Mr. Canedy, that you are 34 years of age, you've had 3 years of college, and that you are doing this freely and voluntarily and this is your plea and you wish to plead guilty to this charge.

**THE DEFENDANT:** Yes.

**THE COURT:** And I've explained the charge to you and you understand that charge to which you're pleading guilty, is that correct?

**THE DEFENDANT:** Yes, I do.

**THE COURT:** Very well. Based upon the record then, I have adjudged him guilty of this offense, and based upon the motion of the State, I will dismiss the habitual criminality allegation in connection with Count 1. I will dismiss Count 2 of the Information and the habitual criminality allegation with respect to Count 2. And is it contemplated then that I will schedule the sentencing for the defendant after I have had the advantage of a presentence investigation?

(Transcript of Proceedings, March 23, 1989, pp. 19–22.)

Forty days later, the day the presentence report investigation was filed, Canedy moved to withdraw his guilty plea.[4] The bases for withdrawal were that (1) at the time Canedy entered the plea, he did not clearly remember the events of the evening of December 27,

---

[4]The presentence report recommended a sentence of nine years. Canedy was not specifically advised of the contents of the presentence report until one or two days after his attorney made the motion to withdraw his guilty plea. Canedy's attorney did not know the contents of the report at the time Canedy decided to withdraw his plea.

574

1988, due to his alcoholism; (2) since Canedy had been incarcerated, he was no longer under the influence of alcohol and was beginning to recall more of what happened on the evening of December 27, 1988; (3) Canedy did not clearly understand the meaning of "depraved mind"; (4) Canedy believed he had a better understanding of the term "depraved mind" than he did when he entered the guilty plea, and he did not believe he was acting with a depraved mind.

On May 5, 1989, an evidentiary hearing was held on Canedy's motion to withdraw his plea. Canedy elaborated further as to the reasons why he wished to withdraw the plea:

> **A (Canedy)** Well, basically I did not understand the charges as the Judge read it off when I was here the last time when I did enter that plea. I did understand the element of the crime which must be proven by—'Cause one or maybe possibly two of the elements now that I do remember more about this incident that I decided that those evidence—those elements does not fit towards my—towards my case.
>
> **Q (Attorney John Sanborn)** You don't think that your conduct that night fits the element?
>
> **A** Right.
>
> **Q** And what is the element that you're referring to?
>
> **A** Well, the bas—the most one I'm really concerned of is the depraved mind.
>
> **Q** Well, can—If you can recall what your thinking was at the time you entered the plea, what did it mean to you then?
>
> **A** Well, at the time when I entered the plea, I—to my understanding I understood that depraved mind was meaning like I was mentally deficient at the time or I didn't—insane or something of that nature.

575

**Q** Okay. And now do you have a better understanding of that?

**A** Yes. Now that I read some of the law library books and stuff concerning this same incidence and crimes—cases similar to this here, I feel that the depraved mind did not no fit my—my case at all.

**Q** You said that there was another element possibly—

**A** The—

**Q** —of the crime that you—that doesn't fit.

**A** Well, it was—I can't remember exactly what the other—I know one of them said I had to actually endanger—

**Q** Uh-huh.

**A** —the safety of another one, and now that I remember it—now that I've—now my memory's coming back since I haven't been drinking. I've been incarcerated all this time. I don't believe I endangered anybody else's safety either.

(Transcript of Proceedings, May 5, 1989, pp. 3-4.)

**Q** Did you ask him [Judge Long] what a depraved mind meant?

**A** Yes, he went—We went over that two or three times, and I still didn't get a clear understanding of it. That's the reason I stopped him a couple of times while—He told me to stop him at any time I didn't understood, and I stopped him a couple times. He backed up; he went over it again and again, and I still didn't really understand it. And after I got back to the—back to the jail, I went into the law library and I read some similar cases on what a depraved mind would constitute and so forth and on, and I feel that it still doesn't fit this case.

*Id.* at p. 6.

> **A** I'm not denying the offense—It was committed, but not this one that's—'Cause the police used creative writing when they filled out this report. That was another one of my problems when you read off the report at the—on the 23rd, as you say. I totally disagree with the report that you read off, and I also—also the victim in this also totally disagreed with that, 'cause, like I said, the police used creative writing when they made out that report.

*Id.* at p. 10.

Canedy commented further on his wife's disagreement with the police report:

> **Q** [**Attorney James Dumke**] Mr. Canedy, isn't it true that the reason you now want to go to trial is because your wife is willing to try to alter her statement to the police?
>
> **A** No.
>
> **Q** That's not true?
>
> **A** That's not true.
>
> **Q** And based on that you're now willing to take the gamble of going to trial?
>
> **A** Right. I'd rather take a shot going to trial, 'cause look—by going to trial—the plea bargain you see—I'm still—I'm facing more time now. There's a possibility I can get more time.
>
> **Q** And that's the reason you want to withdraw this plea?
>
> **A** Right, because I feel that elements of this crime won't be proven. I might be proven—charged for another—for another crime, but the way I'm charged now, that won't not be proven.

577

*Id.* at pp. 11–12.

On June 6, 1989, the circuit court heard arguments on Canedy's motion to withdraw his guilty plea. The court proceeded to read into the record the transcript of proceedings from March 23, 1989, the day Canedy entered the guilty plea. Then the court cited and read portions of cases concerning withdrawal of a guilty plea before sentencing and after sentencing, stating it was basing its decision on this authority.[5] Quoting *State v. Booth,* 142 Wis. 2d 232, 238, 418 N.W.2d 20 (Ct. App. 1987), which addressed withdrawal of a guilty plea after sentencing, the circuit court stated:

> The issue for determination is whether the plea of guilty was voluntarily, advisedly, intentionally and understandingly entered or whether it was, at the time of its entry, attributable to force, fraud, fear, ignorance, inadvertence or mistake such as would justify the court in concluding that it ought not be permitted to stand.

(Quoting *Friedman v. United States,* 200 F.2d 690, 696 (8th Cir. 1952), *cert. denied,* 345 U.S. 926 (1953).)

(Transcript of Proceedings, June 6, 1989, p. 50.)

Finally the circuit court applied the law to the facts of the case before it.

> In this case, the Court feels that Mr. Canedy was so carefully explained the nature of the charge, the elements of the charge, the fact that he stated to the Court that he had had three years of college education, he carefully said to the Court that he understood everything, he didn't indicate in any way that

---

[5]*State v. McConnohie,* 121 Wis. 2d 57, 358 N.W.2d 256 (1984); *Dudrey v. State,* 74 Wis. 2d 480, 247 N.W.2d 105 (1976); *State v. McKnight,* 65 Wis. 2d 582, 223 N.W.2d 550 (1974); *Libke v. State,* 60 Wis. 2d 121, 208 N.W.2d 331 (1973).

he misunderstood or that he had any other questions that he wanted answered, his counsel also assured the Court that this plea was knowingly and voluntarily made, and I feel that he has failed to meet his burden to show that this plea now should be set aside on the grounds that he has presented a *fair and just reason* for doing so (emphasis added).

*Id.* at 51.

Accordingly, the court denied Canedy's motion to withdraw his guilty plea. The court stated further that if it did not deny Canedy's motion, all a defendant would have to do to withdraw a plea is "wait until his time for sentencing came up and then he would be able to come into court and he would be able to say, 'I didn't understand, I didn't understand . . ..' "

On appeal, in a *per curiam* decision, the court of appeals concluded that Canedy satisfied the conditions for withdrawing his plea. The court held that Canedy testified that he did not fully understand the concept of "depraved mind," which "many have found complicated"; when Canedy researched the issue, he found that he was not guilty of the charged crime; and, in addition, the circuit court did not make a finding that Canedy was lying. The court of appeals concluded that Canedy's confusion and assertion of his innocence constituted a fair and just reason to withdraw the guilty plea.

The State petitioned this court for review, and on September 6, 1990, the petition was granted.

We will sustain the circuit court's ruling denying Canedy's motion to withdraw his guilty plea as long as the circuit court did not abuse its discretion. "A discretionary determination, to be sustained, must demonstrably be made and based upon the facts appearing in the record and in reliance on the appropriate and applicable

law." *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). "Additionally, and most importantly, a discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *Id.*

This court first adequately addressed withdrawal of a guilty plea in *State v. Reppin,* 35 Wis. 2d 377, 383, 151 N.W.2d 9 (1967). In that case the court adopted the legal standard found in the American Bar Association Project on Minimum Standards for Criminal Justice—Pleas of Guilty, sec. 2.1 (Tentative Draft, February, 1967). *Id.* at 385–386.

Section 2.1(b) of the 1967 draft provides that "[b]efore sentence, the court in its discretion *may* allow the defendant to withdraw his plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea." *Id.* at 386 (emphasis added).

In *Libke v. State,* this court applied the 1968 approved draft version of the ABA standards to the issue of withdrawal of a guilty plea before sentencing. 60 Wis. 2d at 125. Section 2.1 of the 1968 approved draft provided that "[b]efore sentence, the court in its discretion *may* allow the defendant to withdraw his plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea." *Id.* (emphasis added). This same standard was also applied in *State v. McKnight,* 65 Wis. 2d at 592. In *Libke,* however, the court concluded though that "since the defendant did present a 'fair and just reason' to permit a plea withdrawal, the defendant *should* have been

permitted to withdraw his guilty plea. 60 Wis. 2d at 129.[6]

More recently, in *Dudrey v. State,* this court applied the 1968 approved draft version of the ABA standard to withdrawal of a guilty plea before sentencing. 74 Wis. 2d at 482–83. The court stated that "[u]nder this standard, leave to withdraw a guilty plea *should* be freely granted prior to sentencing where there is a fair and just reason for doing so presented by the defendant." *Id.* at 482 (emphasis added).

Since the court's decision in *Dudrey,* the ABA standard has been revised to read:

> After entry of a plea of guilty or nolo contendere and before sentence, the court *should* allow the defendant to withdraw the plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea.

ABA Standards for Criminal Justice—Pleas of Guilty, Standard 14-2.1 (1979) (emphasis added). The history of the standard notes that "[t]his change in emphasis [from *may* to *should*] reflects the belief that prior to sentenc-

---

[6]The facts in *Libke* are much different than in the case before us. This court, in examining the record, found:

> An independent review of the record in the instant case reveals that the defendant essentially presented one reason for his desire to withdraw the pleas. At the hearing on the motion to withdraw the plea defendant testified that it was never his intention to plead guilty. He stated that things were happening "to darn fast" and that out of confusion he agreed to make such a plea. Defendant also testified that his first attorney talked him into the plea by promising to see that he received "help." Summarizing the reason he desired to withdraw his plea defendant stated "I feel I was led down the wrong way with that lawyer."

In the case before us, Canedy's counsel did not try to get the defendant to plead guilty and had talked over the matter thoroughly with his client before the plea was entered.

ing, when there is a basis for the defendant's motion and the absence of compelling prosecutorial reason for its denial, withdrawal of a plea of guilty or nolo contendere normally should be allowed." This change is consistent with the view expressed by this court in *Libke,* that withdrawal motions made before sentencing are to be freely allowed. 60 Wis. 2d at 127-128. But "freely" doesn't mean automatically.

The appropriate and applicable law in the case before the court, is that a defendant *should* be allowed to withdraw a guilty plea for any fair and just reason, unless the prosecution would be substantially prejudiced.[7] Even though the court, in the past, stated that it had adopted the standard that withdrawal of a guilty plea *may* be allowed for any fair and just reason, it has, in effect, applied the standard that withdrawal of a guilty plea *should* be allowed for any fair and just reason. This is also the same standard the court of appeals applied in the recent case of *State v. Shanks,* 152 Wis. 2d 284, 289, 448 N.W.2d 264 (Ct. App. 1989). Although the circuit court cited the above cases, as well as *State v. Booth,* 142 Wis. 2d at 232, it stated it would not be "fair and just" to allow withdrawal of the guilty plea.

As for the application of the "fair and just" criterion, this court has previously followed federal cases which apply Rule 32(d) of the Federal Rules of Criminal Procedure—the ancestor of the ABA standard.[8] *Libke,*

---

[7]The State has not claimed that granting the motion to withdraw the guilty plea would result in substantial prejudice.

[8]Federal Rule 32(d) provides:

**Rule 32. Sentence and Judgment . . .. (d) Plea Withdrawal.** If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit

60 Wis. 2d at 126. Although some courts have determined that any desire to withdraw the plea before sentence is "fair and just" as long as the prosecution would not be prejudiced, *see, e.g., United States v. Russell,* 686 F.2d 35, 38 (D.C. Cir. 1982); *United States v. Simmons,* 497 F.2d 177, 178 (5th Cir.) *cert. denied,* 419 U.S. 1048 (1974), this court has held that withdrawal of a guilty plea before sentencing is not an absolute right and that a "fair and just reason" contemplates "the mere showing of some adequate reason for defendant's change of heart." *Libke,* 60 Wis. 2d at 128.[9] The reason must be something other than the desire to have a trial. *Id.* at 127. (citing *Everett v. United States,* 336 F.2d 979, 984 (D.C. Cir. 1964)). In addition, the burden is on the

withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. sec. 2255.

[9]The "fair and just" criterion is not to be confused with the "manifest injustice" criterion, which is applied to motions to withdraw a plea *after* sentencing. *See Reppin,* 35 Wis. 2d at 385; *Libke,* 60 Wis. 2d at 124; *Booth,* 142 Wis. 2d at 237. "The 'manifest injustice' test is rooted in concepts of constitutional dimension. Thus, for example, the four situations of manifest injustice outlined in the ABA Standard [one situation is that the plea was not voluntary or was entered unknowingly] all involve serious questions affecting the fundamental integrity of the plea (footnote omitted)." *Libke,* 60 Wis. 2d at 128. This is not to imply, however, that a defendant may not make a motion to withdraw a guilty plea before sentencing for the reason that the plea was entered involuntarily or unknowingly. *See, e.g., Dudrey,* 74 Wis. 2d at 483 (where the defendant claimed he misunderstood the plea bargain); *McKnight,* 65 Wis. 2d at 593 (where the defendant, among other things, claimed he did not understand the proceedings). The motions to withdraw a guilty plea before sentencing and after sentencing may be based on the same reasons, but they will be judged by different criteria.

defendant to offer a fair and just reason for withdrawal of the plea. *Id.* at 127. *See also* ABA Standards—Pleas of Guilty, p. 53.[10] We conclude the standard of proof should be the preponderance of the evidence.

Canedy's reasons for withdrawing the guilty plea were that at the time he entered the plea, he claimed he did not understand the meaning of "depraved mind"; he did not think he had acted with a depraved mind;[11] and he did not remember the events of the night of the incident. Whether these reasons presented an "adequate reason for defendant's change of heart" was up to the discretion of the circuit court.

Canedy testified that after he pled guilty, he did some research on "depraved mind" and determined that his conduct did not meet this element.[12] In addition, he

---

[10]Certain factors may come into play, depending on the defendant's reasons for withdrawal. For example, in *Dudrey,* the defendant claimed that he misunderstood the plea bargain. 74 Wis. 2d at 485. The defendant did not move for withdrawal on this basis until four months after he pled guilty, and offered no reason for the delay. *Id.* In *Dudrey,* such a delay operated against a conclusion that the plea was entered in haste or confusion. *Id.*

[11]We note that in *State v. Dolan,* 44 Wis. 2d 68, 72, 170 N.W.2d 822 (1969), this court held that

> [T]he act of poking a knife in a man's stomach or holding a knife to his throat and threatening to cut him in order to force that person to do the will of the actor is not reckless conduct but rather conduct imminently dangerous and evincing a depraved mind.

[12]Canedy's assertion that he did not act with a depraved mind and therefore is not guilty of the crime is not dispositive, but is an important factor to consider. *Dudrey,* 74 Wis. 2d at 485. Had he not asserted his innocence, any "incriminating statements" made by Canedy would "affect the discretionary determination of the trial court as to the existence of a fair and just reason to withdraw the plea." *McConnohie,* 121 Wis. 2d at 68.

584

thought he had a better memory of the incident since his incarceration. While the circuit court did not express any doubts about Canedy's research, it did doubt the assertion that when Canedy entered the plea, he misunderstood the element of "depraved mind" and now has a better understanding of it. This is evidenced by the fact that the court stated that it carefully explained the charge to Canedy, and he did not ask any questions or give any indication that he was confused at the time. Canedy's counsel also assured the court that Canedy understood what he was doing. Additionally, the court was of the opinion that all Canedy did was say, "I didn't understand." The court did not believe Canedy's asserted reasons for withdrawal of the plea, and therefore did not think they were fair and just.

The case before us is similar to *Dudrey* where the court did not believe the defendant's assertions. In that case, the defendant's reason for withdrawal of his plea was that he "misunderstood" the plea bargain at the time he entered his guilty plea. 74 Wis. 2d at 483. The court conceded that a misunderstanding of the consequences of a guilty plea is grounds for withdrawal, but the misunderstanding must actually exist. *Id.* at 485. The record was clear that the defendant's counsel also assured the court that the defendant understood the nature and implications of the guilty plea. *Id.* at 485. On appeal, the court concluded that "[t]he trial court obviously disbelieved defendant's contention, and in effect found that no reason was offered for withdrawal of the guilty plea." *Id.* at 483.

Similarly, the circuit court in the case before us did not believe Canedy's contention that he misunderstood the meaning of "depraved mind" when he entered the plea. The court was of the opinion that the record did not support such a contention. Canedy's counsel admits

in his brief to this court that "had the trial court in this case denied the defendant's motion on the grounds that he found the defendant's testimony incredible or otherwise unbelievable it is unlikely this appeal would ever have been brought." (Brief of Defendant-Appellant, p. 11.) In the case before us it is obvious from the record that the circuit judge did not believe that Canedy did not understand the charge to which he pled guilty.

■

While we recognize that another judge or another court may not have reached the same conclusion in this case, it is not our function to take on the role of the trier of fact. *See Loy v. Bunderson,* 107 Wis. 2d 400, 414, 320 N.W.2d 175 (1982); *Hartung,* 102 Wis. 2d at 66; *Barrera v. State,* 99 Wis. 2d 269, 282, 298 N.W.2d 820 (1980), *cert. denied,* 451 U.S. 972 (1981). A reasonable judge, considering the law, the facts, and using a logical reasoning process could have denied Canedy's motion to withdraw his plea as did the circuit court in this case. *See Hartung,* 102 Wis. 2d at 66. We conclude there was no abuse of discretion in the case.

*By the Court.*—The decision of the court of appeals is reversed.