STATE of Wisconsin, Plaintiff-Respondent,

v.

Kim K. HOLTZ, Defendant-Appellant.†

Court of Appeals

*No. 92-1554-CR. Submitted on briefs November 30, 1992.—Decided December 30, 1992.*

(Also reported in — N.W.2d —.)

† Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the brief of *Charles Bennett Vetzner,* assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Thomas J. Balistreri,* assistant attorney general.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

SNYDER, J.   Kim K. Holtz appeals from a judgment convicting him of first-degree recklessly endangering safety contrary to sec. 941.30(1), Stats., for chasing and swinging at his former wife with an axe. He argues that the evidence is insufficient to prove that his action "showed an utter disregard for human life" within the meaning of the statute. His argument is to no avail. We affirm the judgment.

Although divorced since 1985, Kim and Rose Holtz continued to live together with their two children. The episode at issue occurred in October 1991. Rose and Kim got into an argument at the bar Kim ran. Several hours later, Kim arrived at the house intoxicated and the couple resumed their earlier argument. Rose's screams woke the two sleeping children. The boys entered the living room to see Kim kneeling on top of Rose, holding her head down by her hair and punching her in the face with his fists. Rose then bit Kim, drawing blood. Kim grabbed a splitting maul, swung it at Rose and, because he was holding the axe by its head, hit her in the stomach with the handle. Kim twice stopped one of the children from telephoning for help.

Brandishing the axe which he now held by the handle, Kim chased Rose out of the house with one of the children trying to hold on to the head of the axe. Kim shook him off and pursued Rose around some parked cars, taking full swings at her with the axe. At one point Kim lost sight of Rose when she fell; he searched for her until he found her, then continued the chase.

One of the children testified that Rose fell again as she attempted to get back into the house, and that Kim "took a slice" at her and then "another slice." The axe missed Rose by one-and-one-half to two inches. It almost hit the boys foot, however, and left "two slice marks" in the wooden deck. One of the boys testified that at some point during the chase, Kim said to them: "Let's split her head open and bury her in the woods." Rose and the other boy corroborated that testimony. According to both children, Kim also told the boys to "[l]oad up the rifle and the shotgun and we'll have target practice."

The children and Rose finally were able to get back inside, lock the door and telephone a neighbor for help. One of the boy's let Kim in when, in the boys words, Kim threatened to "break [the door] down or slice it open or something." Once inside, Kim again swung the axe at Rose. Rose testified that one of the boys "grabbed" the axe from Kim and hid it under the couch. The boys testified that Kim set the axe down a few minutes after entering, at which point the younger boy hid it under the couch.

After a two-day trial, the jury found Kim guilty of first-degree recklessly endangering safety in violation of sec. 941.30(1), Stats.[1] The jury was not asked to consider a lesser charge under sec. 941.30(2) without the "utter

---

[1] Section 941.30, Stats., provides:

disregard for human life" requirement. Thus, the sole issue on appeal is whether the evidence is sufficient to sustain Kim's first-degree conviction.

To gain a conviction under sec. 941.30(1), Stats., the state had to prove that (1) Kim endangered the safety of another human being (2) by criminally reckless conduct and (3) that the circumstances of his conduct showed utter disregard for human life. *See* Wis J I—Criminal 1345. Only the evidence in support of the third element is disputed.

■ In reviewing the sufficiency of the evidence to support a conviction, an appellate court may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752, 757–58 (1990).

Kim argues that we must consider his conduct "during the entire episode rather than at one discrete point." He emphasizes that upon re-entering the house he relinquished the axe to his son and ceased his aggressive acts toward Rose. He characterizes his later suspension of his aggression as proof that he showed some concern for Rose's well-being. Accordingly, he contends that the "discrete" actions of swinging the axe at Rose do not satisfy the "utter disregard for human life" element of the crime.

---

**Recklessly endangering safety. (1)** FIRST-DEGREE RECKLESSLY ENDANGERING SAFETY. Whoever recklessly endangers another's safety under circumstances which show utter disregard for human life is guilty of a Class D felony.

**(2)** SECOND-DEGREE RECKLESSLY ENDANGERING SAFETY. Whoever recklessly endangers another's safety is guilty of a Class E felony.

Kim relies primarily on *Wagner v. State,* 76 Wis. 2d 30, 250 N.W.2d 331 (1977), and *Balistreri v. State,* 83 Wis. 2d 440, 265 N.W.2d 290 (1978).[2] In *Wagner,* the defendant, while drag racing, killed a pedestrian he had swerved to avoid. The court concluded that the defendants action of swerving indicated some regard for the life of the victim. *Wagner,* 76 Wis. 2d at 47, 250 N.W.2d at 340.

In *Balistreri,* the defendant drove his car at high speeds through a crowded downtown Milwaukee street during rush hour, bypassing red lights and driving the wrong way on one-way streets, at one point forcing three pedestrians to jump back on the sidewalk to safety. The supreme court deemed the evidence insufficient to convict the defendant on the element of "conduct evincing a depraved mind" because he had turned on his headlights, swerved to avoid the pursuing squad car, honked his horn, and braked to avoid a collision. *Balistreri,* 83 Wis. 2d at 457, 265 N.W.2d at 298. The court reasoned that such actions "show some regard for the life of others." *Id.* It further noted that the state had offered no evidence that the defendant even saw, let alone was willing

---

[2] Section 941.30, Stats., was repealed and recreated effective January 1, 1989. Sections 472zktb and 3204(57)(ag), 1987 Wis. Act 399. Both *Balistreri v. State,* 83 Wis. 2d 440, 265 N.W.2d 290 (1978), and *Wagner v. State,* 76 Wis. 2d 30, 250 N.W.2d 331 (1977), were decided under the former sec. 941.30. That version of the statute called for a fine and/or imprisonment for "[w]hoever endangers another's safety by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life." The current sec. 941.30(1) forbids "recklessly endanger[ing] another's safety under circumstances which show utter disregard for human life." The two are analogous. *See* Judicial Council Committee Note, 1987, sec. 941.30. Accordingly, the cases decided under the former statute are instructive.

to hit, the three pedestrians. *Id.* at 458, 265 N.W.2d at 298.

The *Balistreri* court also stated that the charged conduct had to be not simply negligent or reckless, but "so fraught with danger to the victim's life that to engage in it implies a constructive intent to maim or kill." *Id.* As the supreme court has made clear on an earlier occasion, however, such intent is satisfied if the act is performed with "the general intention to do harm without concern whether such harm would result in death." *State v. Dolan,* 44 Wis. 2d 68, 72, 170 N.W.2d 822, 824 (1969).

*Wagner* and *Balistreri* are distinguishable from the situation here. In both those cases, the actions the supreme court found to evince concern for the life of the victim were taken *during* the commission of the act. Kim, by contrast, took no such concerned action as he chased Rose with the axe; hit her in the stomach with the axe handle; swung it at her several times, missing her only by inches; and nearly hit his little boy's foot. On the contrary, although Kim ultimately voluntarily desisted from attack, he did so only after having shown no regard for her life and safety. In fact, the evidence suggests he may have desisted only when he heard the neighbors arrive.

Even if Kim did not intend to kill Rose, the conduct—including the instrumentality—must have had the potentiality of causing death. *Dolan,* 44 Wis. 2d at 72, 170 N.W.2d at 824. Kim's actions with the axe plainly did. Viewed most favorably to the state and the conviction, the evidence is not so lacking in probative value and force that the jury, acting reasonably, could not have found guilt beyond a reasonable doubt. *See Poellinger,* 153 Wis. 2d at 507, 451 N.W.2d at 757-58.

*By the Court.*—Judgment affirmed.