STATE of Wisconsin, Plaintiff-Respondent,

v.

Brian J. SALENTINE, Defendant-Appellant.†

Court of Appeals

*No. 95–3494–CR. Submitted on briefs October 15, 1996.—Decided November 13, 1996.*

(Also reported in 557 N.W.2d 439.)

†Petition to review denied.

419

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Charles Bennett Vetzner*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Sharon Ruhly*, assistant attorney general.

Before Anderson, P.J., Brown and Snyder, JJ.

BROWN, J. Brian J. Salentine has a developmental disability and an IQ of 69. The trial court nonetheless concluded that he competently submitted an *Alford*[1] plea to charges that he sexually assaulted his six-year-old niece. In this appeal, Salentine argues that the trial court should have permitted him to withdraw his plea.

Salentine raises four specific claims. First, he contends that the plea proceedings were invalid as a matter of law because he only stated that he was offering an *Alford* plea, which is not one of the enumerated pleas that a trial court may accept under §§ 971.06 and 972.13(1), STATS. Next, Salentine argues that he presented the trial court with three "fair and just" reasons to set aside his plea. *See State v. Canedy*, 161 Wis. 2d 565, 582, 469 N.W.2d 163, 170 (1991). One, noting his disability, he claims that he did not fully comprehend the plea proceedings. Two, Salentine contends that he did not consider the possibility of long-term commitment as a sexual predator under ch. 980, STATS. And three, Salentine contends that he discovered new evidence about a juvenile who previously assaulted the victim and that this evidence would have impacted his decision to enter a plea. While Salentine has not reviewed the contents of these sealed juvenile records, he claims that he was denied the right to effective appellate counsel because he was not permitted to review the records and gauge if the trial court erred in its in camera review. We reject all of his claims and affirm his conviction.

We will begin with a recitation of the facts supporting Salentine's conviction and a brief description of the

---

[1] *See North Carolina v. Alford*, 400 U.S. 25 (1970).

pretrial proceedings. Further facts will be forthcoming as necessary.

The police interrogated Salentine after the victim's mother, who is also Brian's sister, told police that she thought Salentine had sexually assaulted her daughter. Salentine eventually admitted to the police that the assault occurred on June 11, 1994, when he was left to babysit his niece and two nephews. That evening, he gave his niece a bath and became sexually aroused while he was drying her off; he then put his pinky finger into her vagina a few times. The victim's mother became suspicious two days later when she noticed that her daughter's genitalia were red and appeared irritated.

After pretrial proceedings, including Salentine's failure to persuade the court to suppress his statements to the police, Salentine filed with the trial court a Request to Enter Plea and Waiver of Rights. This six-page form was filled out by Salentine and his attorney. It contained information about Salentine's educational history (he has completed eleven years of school) and work history. The form also verified that he was willing to waive his trial-related constitutional rights and explained that he wanted to enter an *Alford* plea to the charges. *Cf. State v. Moederndorfer*, 141 Wis. 2d 823, 416 N.W.2d 627 (Ct. App. 1987). The trial court subsequently held a hearing and accepted Salentine's plea.

We turn to the first of Salentine's appellate claims and inquire into whether the court made a legal error when it accepted his *Alford* plea.[2] In support, Salentine cites § 971.06, STATS., which provides in pertinent part:

---

[2] The supreme court authorized trial courts to accept *Alford* pleas in *State v. Garcia*, 192 Wis. 2d 845, 856, 532 N.W.2d 111, 115 (1995).

424

**(1)** A defendant charged with a criminal offense may plead as follows:

(a) Guilty.

(b) Not guilty.

(c) No contest, subject to the approval of the court.

(d) Not guilty by reason of mental disease or defect.

Salentine also notes how § 972.13(1), STATS., demands that a "judgment of conviction shall be entered upon ... a plea of guilty or no contest."

Salentine asserts that the plea procedures did not meet the requirements of the above statutes. He points to the following sections of the plea transcript:

THE COURT: All right Mr. Salentine let me start out with reminding you of the charge in the information .... To that charge sir what plea do you now wish to enter.

SALENTINE: Alford plea.

THE COURT: Is that Alford plea of guilty or no contest?

COUNSEL: Let's use no contest Judge.

THE COURT: Do you understand that by entering the special plea of no contest that the court would in all likelihood find you guilty today.

SALENTINE: Yes.

Salentine argues that the plea proceedings fail to meet the requirements of the above statutes because he did not personally enter a "no contest" plea. Rather, he characterizes the transcript to reveal only that "he agreed with the trial court's characterization of that situation." He claims that the language in § 971.06,

STATS., which says that a defendant "may plead . . . no contest," imposed a duty on this trial court to have again asked Salentine: "Sir, what plea do you now wish to enter?" when Salentine said only that he was offering an "*Alford* plea." He further suggests that the trial court should have then asked him to verbalize whether it was an "*Alford* plea guilty" or an " *Alford* plea no contest."

The State responds that a trial court gauges whether a defendant has offered a proper plea through the personal colloquy required under § 971.08(1), STATS., and decisions such as *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), not by prompting the defendant to use the right words. The State argues that the best way for a trial court to determine if the defendant is offering the plea knowingly, intelligently and voluntarily is to ask the defendant. *See id.* at 268, 389 N.W.2d at 23-24. The State cautions that adopting Salentine's interpretation of §§ 971.06 and 972.13(1), STATS., thereby requiring the defendant to verbalize the terms "*Alford* plea guilty" or "*Alford* plea no contest," would only inject needless "ritual" into the proceedings. The State contends instead that we should look to the substance of the exchange between the trial court and the defendant and determine if the defendant knew what he or she was doing.

We agree with the State's analysis. When this court addresses alleged flaws in plea proceedings, its first task is to read the transcripts and determine if the defendant has made a prima facie showing that he or she did not understand the proceedings. *See Bangert*, 131 Wis. 2d at 274, 389 N.W.2d at 26. Here, after reading the transcript, we conclude that Salentine understood he was entering an "*Alford* plea no contest,"

understood the charges he was entering this plea to, and understood the ramifications of this plea.

We rest our conclusion on the following statements. First, the transcript Salentine highlights above shows that the trial court asked him if he knew that the "special plea of no contest" would still result in him being found "guilty." The trial court obviously wanted to ensure that Salentine understood that his particular plea would still result in a conviction. Moreover, the trial court asked Salentine if "anyone threatened you or promised you anything to get you to enter [an] Alford plea of no contest." With this inquiry, the trial court not only tested if the plea was voluntary, but also double-checked that Salentine was pleading "*Alford* plea no contest." Finally, the trial court asked Salentine if he understood that:

> by entering this Alford plea of no contest while you do not admit your guilt to me you do indicate to [the] court that you believe first of all that [the] State would have enough evidence or information available to it to convict you . . . ?

We thus see that Salentine was told, in plain language, what it meant to enter an "*Alford* plea no contest." His affirmative response to the above inquiry is more than sufficient proof that he understood what he was doing. Salentine did not have to use the terms "*Alford* plea no contest" for us to reach this conclusion.

Next, we turn to Salentine's claim that he had "fair and just" reasons to withdraw his plea. Some more procedural background is necessary to our discussion of these issues.

The trial court accepted Salentine's plea on October 21, 1994. At that hearing, the court also ordered the

427

Department of Probation and Parole to conduct a presentence investigation (PSI). The sentencing hearing was scheduled for November 28. But Salentine was later unable to attend the November sentencing hearing. He was transferred from the Waukesha County Jail to the Dodge Correctional Institution on a separate sentence and the parties and the court were not properly informed. Although they rescheduled sentencing for December 19, the trial court did confirm that Salentine's attorney had received a copy of the PSI.

Before the rescheduled sentencing hearing, however, Salentine's attorney filed a motion to rescind the plea. Based on his correspondence with Salentine, he was concerned that Salentine's "judgment in this case is seriously impaired" and believed that Salentine should present his case to a jury. Counsel also explained how his observations of Salentine led him to a conclusion that Salentine had a "substantial inability . . . to formulate an opinion and decision and understand the ramifications thereof."

The trial court addressed Salentine's motion to withdraw his plea at the opening of the December 19 sentencing hearing. While the court acknowledged receiving the motion, because it had already reviewed the PSI and prepared for sentencing, the court reasoned that it would delay consideration of the plea withdrawal issue until any possible postconviction motions were filed. The court, however, reserved Salentine the right to the "fair and just reason" standard, rather than the higher "manifest injustice" standard typically applied to a postconviction motion to withdraw a plea. *See Libke v. State*, 60 Wis. 2d 121, 128, 208 N.W.2d 331, 335 (1973). The trial court then sentenced Salentine to eight years of imprisonment.

After sentencing, Salentine's appellate counsel filed a motion for postconviction relief. Salentine again sought permission to withdraw his plea on various grounds. One, he renewed his argument that his developmental disability impaired his judgment. In support, Salentine emphasized how statements he made to the police and to the court admitting his crime contradicted statements in the letters he sent to his trial counsel about how he hoped to take the case to trial. Two, Salentine contended that he did not consider how he might be subject to commitment under ch. 980, STATS., when he entered his plea. And three, Salentine claimed that he had newly discovered evidence which he did not account for when he made the decision to enter the plea. This evidence consisted of records associated with the prosecution of a juvenile who had also sexually assaulted the victim. Salentine believed that the victim might be confusing him with that juvenile.[3] The trial court rejected all three arguments.

As we previously noted, the claim that Salentine should be permitted to withdraw his plea because his developmental disability impaired his judgment was evaluated under the "fair and just reason" standard because it was raised before sentencing. *See Libke*, 60 Wis. 2d at 128, 208 N.W.2d at 335. Our review of determinations made under this standard is deferential, and we may not reverse unless the trial court misused its discretion. *See State v. Shanks*, 152 Wis. 2d 284, 288, 448 N.W.2d 264, 266 (Ct. App. 1989). We examine the record and gauge if the trial court reached a reasonable conclusion and whether that conclusion was based on

---

[3] In this postconviction motion, Salentine also raised his argument concerning the sufficiency of his *Alford* plea under § 971.06, STATS., which we previously addressed.

the proper legal standard and a logical interpretation of the facts. *See id.* at 289, 448 N.W.2d at 266.

We thus turn to the trial court's analysis. It rejected the claim that Salentine's disability hindered his judgment based on the following considerations.

The trial court started with the question of whether the apparent inconsistencies between the statements that Salentine made to the police, and those made in letters to his trial counsel, revealed that he did not understand the ramifications of his plea. But the trial court observed that Salentine also sent an unsolicited letter to the court, where he expressed fear that he would be sentenced to "prison for a long long time" and asked for "another chance." In that letter, Salentine admitted sexually assaulting his niece in the same way that he described the events to the police. The court reasoned that Salentine's "great consistency" between the statements made to the police and those made in the letter to the court outweighed concerns that the letters he later sent to his attorney, where he still talked about pursuing a possible trial, somehow revealed that Salentine did not actually assault his niece or that Salentine did not know that his plea would preclude him from taking the matter to trial.

In addition, the trial court also reflected on the precautions it took during the plea proceedings to ensure that Salentine understood the ramifications of his plea. The court noted how it recognized Salentine's "vacillation" and thus took "greater pains" to make sure that Salentine was certain about the rights he was relinquishing.

Perhaps the best indication that Salentine understood the ramifications of his plea, and that his disability was not a legitimate reason to withdraw it, was the State's evidence of how Salentine had previ-

430

ously submitted pleas to other criminal charges. The trial court found that Salentine was "no rookie" and noted that he indeed had entered an *Alford* plea in another case.

We conclude that the trial court properly exercised its discretion when it chose to uphold the plea. This court is certainly aware that a person with a developmental disability may have problems understanding the intricacies of legal proceedings and may make statements that he or she was involved in a crime without comprehending the possible significance of such statements. We further acknowledge that these difficulties could be a "fair and just" reason to set aside a plea. But we also recognize that many persons with developmental disabilities are capable of understanding the plea process and can positively and truthfully admit to committing a crime. Therefore, the trial court has the responsibility in each individual case to determine whether a person's developmental disability has materially affected the case.

We glean from the trial court's analysis that it recognized these two possibilities, but nonetheless concluded that Salentine, despite his disability, understood the ramifications of his decision to enter a plea. The trial court found that Salentine was engaged in a deliberate attempt to manipulate it into believing that his disability was a legitimate reason for him to escape the possibility of a long prison sentence and take his chances at a trial. Given the trial court's detailed evaluation of Salentine's disability and how it affected the credibility of his claim, we cannot say that it reached an illogical or factually insupportable conclusion. We acknowledge that a trial court's failure to

431

comprehensively evaluate the effects of a person's developmental disability could be grounds for concluding that his or her plea is invalid, but this is not such a case.

We next address Salentine's concern that he failed to consider the ramifications of a possible ch. 980, STATS., commitment when he offered his plea. Although Salentine claims that this constitutes a separate "fair and just" reason to set aside his plea, we conclude that he did not properly reserve his right to pursue this issue under this standard.

As we explained above, Salentine's original request to set aside his plea was properly filed before sentencing. But in this motion, Salentine made no mention of ch. 980, STATS. This issue was not raised until Salentine filed his postconviction motion.

■

This court described in *Shanks* that one way to measure whether a reason for setting aside a plea was "fair and just" is to ask whether it was "plausible." *Shanks,* 152 Wis. 2d at 290, 448 N.W.2d at 267 (quoted source omitted). We apply waiver to Salentine's ch. 980, STATS., claim because we have just such doubts. Since this specific issue was not presented to the court until after sentencing, it is implausible that Salentine was actually concerned about the possibility of sexual predator commitment when he first claimed that his decision to enter a plea was a mistake. Quite simply, once the trial court passed sentence, it closed the door on Salentine's ability to present further "fair and just" reasons for setting aside his plea. And while we could address this claim under the postconviction "manifest injustice" standard, this court's decision in *State v. Myers*, 199 Wis. 2d 391, 544 N.W.2d 609 (Ct. App. 1996), which holds against Salentine, would apply.

432

Lastly, we turn to Salentine's concerns regarding his discovery of evidence about the victim's other assaulter. The trial court conducted an in camera review of the records and denied Salentine access to them after it found that the information did not have any relevancy to the motion to withdraw his plea.

While Salentine does not directly challenge the trial court's decision, he makes a related complaint about how the procedures relating to in camera reviews of confidential records set out in *State v. Shiffra*, 175 Wis. 2d 600, 499 N.W.2d 719 (Ct. App. 1993), still do not permit appellate counsel to access the records. He contends that another in camera review by the court of appeals is not a sufficient "substitute for advocacy by counsel."

We decline Salentine's invitation to develop a different process for appellate review than the same in camera review that is called for under *Shiffra*. We acknowledge that this court has recognized the importance of providing appellate counsel with the information necessary to mount an attack on the trial court's in camera findings. *See State v. Denny*, 120 Wis. 2d 614, 626, 357 N.W.2d 12, 18 (Ct. App. 1984) (noting that the court of appeals granted appellate counsel access to sealed police reports). But the due process principles associated with ensuring criminal defendants with zealous appellate advocacy must be balanced against the protection of privileged communications or confidential records. We affirm our belief that in camera review by the court of appeals is the best way to accomplish this balancing. *See Shiffra*, 175 Wis. 2d at 611-12, 499 N.W.2d at 724. Since our in camera review of the targeted records confirms the trial court's analy-

sis, we uphold the decision not to release the records to Salentine's appellate counsel.

*By the Court.*—Judgment and order affirmed.