STATE of Wisconsin, Plaintiff-Respondent,

v.

Dennis J. KIVIOJA, Defendant-Appellant.

Supreme Court

*Nos. 97–2932–CR, 97–2933–CR. Oral argument February 12, 1999.—Decided May 4, 1999.*

(Also reported in 592 N.W.2d 220.)

For the defendant-appellant there were briefs by *Mark G. Sukowaty* and *Sukowaty Law Office*, Madison and oral argument by *Mark G. Sukowaty*.

For the plaintiff-respondent the cause was argued by *Sandra L. Tarver*, assistant attorney general, with whom on the brief was *James D. Doyle*, attorney general.

¶ 1. DONALD W. STEINMETZ, J. These consolidated cases are before the court on certification from the court of appeals, pursuant to Wis. Stat.

§ (Rule) 809.61 (1997–98). Defendant-appellant appeals an order by the Honorable Henry B. Buslee, Fond du Lac County Circuit Court.

¶ 2. The issue in this case, as certified, is the manner in which a circuit court should evaluate recantation testimony when it is offered as new evidence in support of a defendant's plea withdrawal prior to sentencing. The more immediate issue, from the perspective of the defendant-appellant, Dennis J. Kivioja, is whether his offer of the recantation of the State's primary witness in the cases against him was a sufficient "fair and just reason" to support his motion to withdraw his plea.

¶ 3. This is a consolidated appeal of two 1995 cases in which Kivioja was charged with 37 crimes involving burglary and related matters. Pursuant to a plea agreement, Kivioja entered no contest pleas to five counts of party to the crime of burglary in each of the two cases. Less than two weeks later the State's primary witness, Jody Stehle, recanted his earlier, nonsworn statements implicating Kivioja in the crimes to which Kivioja pled. Kivioja moved to withdraw his pleas, but following an evidentiary hearing wherein Stehle testified under oath for the first time, recanting his accusations against the defendant, the circuit court denied the motion. The defendant appealed, and the court of appeals certified the issue described to this court.

I

¶ 4. On the evening of July 6, 1995, an officer of the Fond du Lac County Sheriff's Department observed a vehicle matching a witness-provided description of a car that had been spotted near a home that had been burglarized on July 3. The officer followed the vehicle,

which stopped shortly thereafter. When the officer asked for identification, the driver explained that he had none, but stated that his name was John L. Smith. The passenger, the defendant Kivioja, told the officer that the driver's name was really Jody Stehle. The officer arrested Stehle upon determining that he had two active warrants for his arrest. Kivioja was not arrested at that time.

¶ 5.  Stehle subsequently confessed to sheriff's detectives that he and Kivioja together were responsible for many burglaries in Fond du Lac County during the previous two months. In addition, he told detectives that Kivioja acted alone in a May 9, 1995, burglary, a date on which he stated that he himself had been in jail and could not have participated. In this initial statement to detectives, Stehle explained that he had spoken to Kivioja from jail, and that Kivioja had admitted over the phone that he had stolen the $600 reported missing in the burglary.

¶ 6.  In the officers' search of the vehicle in which Stehle and Kivioja had been stopped, they discovered numerous items which had been reported stolen from a home on July 6, the date of the stop. In a search of Kivioja's apartment, officers found four items matching the descriptions of items reported stolen during the previous two months from various Fond du Lac County homes. The serial numbers of the two electronic devices found had been removed.

¶ 7.  Together with Stehle's statements, this evidence was used in support of the probable cause portion of the criminal complaint which led to Kivioja's arrest on July 10, 1995, when he was charged with five counts of party to the crime of burglary, contrary to Wis. Stat. §§ 939.05 and 943.10(1)(a).

275

¶ 8. On July 13, 1995, the prosecutor filed an information charging the same five counts of party to the crime of burglary, and also charged five counts of party to the crime of theft, contrary to Wis. Stat. §§ 939.05 and 943.20(1)(a), five counts of party to the crime of criminal damage to property, contrary to §§ 939.05 and 943.01(1), and five counts of bail jumping, contrary to Wis. Stat. § 946.49(1)(b), to which the defendant entered pleas of not guilty.

¶ 9. A second criminal complaint against Kivioja was served on November 6, 1995, charging him with 16 additional counts of party to the crime of burglary and one count of party to the crime of attempted burglary, contrary to Wis. Stat. §§ 939.05, 939.32, and 943.10(1)(a). As in the earlier complaint, the probable cause portion of this complaint was based in part on Stehle's statement that Kivioja was involved in the burglaries. On December 1, 1995, Kivioja waived his preliminary hearing in regard to this second complaint and on February 5, 1996, Kivioja entered pleas of not guilty to all 17 of the counts.

¶ 10. On August 14, 1996, on motion of the State, the two cases were joined and they were later scheduled for an October 2, 1996, trial. The trial was never held, however, as Kivioja decided to enter a plea. At his October 3, 1996, plea hearing, Kivioja agreed to plead no contest to five counts of party to the crime of burglary in the first case, and five counts of party to the crime of burglary in the second case, in exchange for the dismissal of the remaining charges, which were to be read in for the purposes of sentencing. Sentencing was scheduled for a later date.

¶ 11. During the 15 months between Stehle's arrest and Kivioja's plea, the State's case against Stehle was also progressing. Following his July 6,

1995, arrest, Stehle was held in the Fond du Lac County jail. At one point, when both he and Kivioja were held there, Stehle requested a transfer, explaining to his attorney that Kivioja had threatened him and that he was concerned for his safety. The request was met and Stehle was transferred to the Green Lake County jail, returning to the Fond du Lac County jail only after Kivioja was no longer there.[1]

¶ 12.   On October 17, 1995, nearly one year before Kivioja reached his plea agreement, Stehle reached his own plea agreement with the State pursuant to which Stehle pled no contest to ten of the counts with which he was charged and agreed to testify to Kivioja's involvement in the burglaries in exchange for which the additional charges against him would be dismissed and were to be read into the record for the purposes of sentencing and restitution. The agreement further provided that both Stehle and the State would ask the court to delay Stehle's sentencing until after the completion of Kivioja's case.

¶ 13.   Following his conviction, but prior to Kivioja's case reaching a conclusion, at Stehle's request his attorney filed a number of motions requesting that the circuit court sentence him. In September 1996, contrary to his own agreement with the State and just weeks prior to Kivioja's own agreement, the circuit court sentenced Stehle to a total of 20 years in prison

---

[1] The record discloses that subsequent to his July 10, 1995, arrest, and prior to the second criminal complaint served in November 1995, Kivioja was sentenced to the Wisconsin Prison System following his conviction of second degree sexual assault in a crime unrelated to those subject to this appeal. Kivioja was held in the Fond du Lac County jail prior to being sentenced to the Wisconsin Prison System.

and ten years of probation and ordered him to pay more than $13,000 in restitution.

¶ 14. On October 14, 1996, less than two weeks following Kivioja's pleas, Stehle wrote a 15-page letter recanting his earlier statements that Kivioja was involved in the burglaries for which Kivioja had pled no contest. This letter was addressed to an investigator in Kivioja's employ who then directed the letter to Kivioja.

¶ 15. In his recantation, Stehle wrote that he had lied to detectives when he told them that Kivioja had been involved in the burglaries. He offered two explanations for his incriminating statements. First, he wrote that he had believed that placing blame for the burglaries on Kivioja would shift suspicion away from himself. Second, he wrote that he had lied because he was upset that Kivioja had given the officers Stehle's true identity which led directly to his arrest. He further explained that Kivioja had never been with him when he had committed the burglaries.

¶ 16. In a separate letter to Kivioja's investigator, Stehle expressed what may be characterized as anger in response to the sentence he had received:

> [T]hey gave me 20 years with 10 years probation consecutive and ordered me to pay around $13,200.00 worth of restitution, and I told on myself. If I eve[r] get into anymore trouble again I'll know how to tell the cops to kiss my dick. They better not even think of speaking to me again, all their promises of, 'Oh, you'll get of [sic] easy and shit,' it was all bullshit.

On October 23, 1996, Stehle signed a sworn statement reaffirming his recantation.

¶ 17.   Once Kivioja learned of the recantation, he obtained an attorney[2] who, on January 15, 1997, filed a motion and affidavit to withdraw Kivioja's plea. The affidavit which accompanied the motion stated in part that the defendant had entered a plea because he knew that Stehle was going to implicate him in the burglaries, and he had believed that due to his own [criminal] record, a jury would not have believed his protestations of innocence. He further explained that he had entered a plea to reduce the maximum amount of time he would be incarcerated.

¶ 18.   On April 10, 1997, the circuit court held an evidentiary hearing on Kivioja's motion. The defendant explained that his reason for moving to withdraw his pleas and instead proceed with trial was based exclusively on the new evidence that Stehle had recanted his earlier statement implicating him.[3] When asked by the prosecutor if he had any other evidence upon which his motion was based, Kivioja replied that he did not. While he did explain that he had some evidence that would have contradicted Stehle's testimony at trial, Kivioja did not clarify when he found this evidence. We read his motion, as the circuit court and the parties have, as one supported exclusively with Stehle's recantation.

¶ 19.   Stehle's testimony was in large part in accord with his letter of recantation, and he stated numerous times that Kivioja was not involved in any of the burglaries to which Kivioja had pled no contest. As motive for his earlier statements, Stehle testified that

[2] This retention was Kivioja's third attorney in these consolidated cases.

[3] A recantation is considered newly discovered evidence. *See Dunlavy v. Dairyland Mut. Ins. Co.*, 21 Wis. 2d 105, 114 n.2, 124 N.W.2d 73 (1963).

he had been upset that Kivioja had provided the officers with Stehle's real name and identification that had led to his arrest. He further testified that knowing that some of the stolen items were in Kivioja's possession, he was certain that he could wrongly implicate Kivioja.

¶ 20.   In eliciting Stehle's testimony that Kivioja was not involved with the burglaries, Kivioja's counsel asked Stehle specific questions with respect to the items taken from the homes burglarized, a task with which Stehle had some difficulty, attributing his vague memories of the matter to the passage of time. At one point during Stehle's testimony, the circuit court acknowledged its own difficulty in deciphering Stehle's answers: "Everything he answers is vaguely and doesn't remember and couple of years ago, but he's not making any profound statements that I can put my hat on." Kivioja's attorney responded that the profound statement was the testimony that Kivioja was not with Stehle at the time of any of the crimes.

¶ 21.   On cross-examination, the prosecutor questioned Stehle at some length regarding the one particular crime in which Stehle had earlier implicated Kivioja as being solely responsible. As noted above, in his initial statement to officers, Stehle had stated that while he was in jail, Kivioja admitted over the telephone that he [Kivioja] had committed the burglary in which $600 cash was taken. At the hearing, Stehle testified that in fact Kivioja had not committed the crime, but that he himself had committed the burglary just prior to going to jail; i.e., did it earlier in the day by himself.

¶ 22.   The prosecutor then pointed out an inconsistency between his testimony and his written recantation letter of October 1996. The prosecutor

noted that in the written statement, Stehle claimed that *neither* he nor Kivioja committed the burglary in question, attributing that crime to an unnamed third person. The prosecutor read from Stehle's written statement:

Question: Dennis also didn't do that six hundred dollar burglary, and I was not in jail. A check with the jail should confirm this. What is that word? Oh, but also didn't do—but also I didn't do that burglary, is that right?

Answer: Yeah.

Question: I later learned who did it though. I remember me and Dennis were out job hunting on the day that I later learned from the guy who did this burglary, and one of the places we stopped out—was out in Marytown area, which is also to the best of my memory the area where this burglary occurred.

In addition to confronting Stehle with this inconsistency within his recantations, the prosecutor also asked Stehle to explain the fear he had of Kivioja while the two were being held at the Fond du Lac County jail. Stehle explained that when he told his attorney to get him away from Kivioja he was not in fear of Kivioja (the reason for his request at the time made), but rather was an effort to make the case against Kivioja stronger. Finally, the prosecutor elicited from Stehle that although he was jailed from June 1995 through his sentencing in September 1996, it was not until after Stehle received his 20-year sentence that he found it necessary to recant his initial statement.

¶ 23. Prior to reaching its decision, the circuit court read into the record that portion of Stehle's letter in which he had expressed anger with the sentence he had received. The court also found that Stehle,

> along with his [written] statement, shows so many marked inconsistencies, that reliability and credibility of the witness is seriously challenged. He has vague recollections, testifies that he served some time or at least they passed some time together in prison, and as I pointed out before, the testimony here is the fair and just reason, and as Mr. Nesmith points out in the brief, the recantation of a prior statement can contain sufficient facts and reasons to satisfy the requirement for corroboration of the recantation. . . .

The court also found that "the various acts of burglary committed in [sic] supposedly by Stehle, by himself, are completely uncorroborated and unsubstantiated."

¶ 24. The circuit court then denied Kivioja's motion. The transcript from the hearing together with the written order which followed disclose that the circuit court applied the facts of the case to two distinct tests: first, the circuit court identified that a plea withdrawal prior to sentencing should be granted for any "fair and just reason." Second, noting that the reason defendant offered in support of his motion was new evidence in the form of a recantation, the circuit court identified as relevant the court of appeals' discussion in *State v. McCallum*, 198 Wis. 2d 149, 542 N.W.2d 184 (Ct. App. 1995),[4] that whether a defendant could with-

---

[4] The circuit court relied upon *State v. McCallum*, 198 Wis. 2d 149, 542 N.W.2d 184 (Ct. App. 1995). Approximately one month after the circuit court's written order, this court, in *State v. McCallum*, 208 Wis. 2d 463, 561 N.W.2d 707 (1997), affirmed

draw a plea following sentencing, based upon a recantation, in part depended upon "whether or not a jury could believe the recanted statement as opposed to the original statement." In its written order denying the motion to withdraw, the court wrote:

1. a reasonable jury would not believe the recanting statement of accomplice Jody Stehle;

2. there is no corroboration of Jody Stehle's recantation;

3. the defendant has failed to present a fair and just reason for withdrawing his pleas.

On April 23, 1997, the circuit court sentenced Kivioja to 25 years and ten years probation in accordance with Kivioja's plea agreement.

¶ 25. Kivioja appealed and the court of appeals certified the question, requesting clarification of the test circuit courts should use in assessing the use of a recantation in a plea withdrawal prior to sentencing.

II

■

¶ 26. A defendant seeking to withdraw a plea of guilty or no contest before sentencing must show that there is a "fair and just reason," for allowing him or her to withdraw the plea. *Libke v. State*, 60 Wis. 2d 121, 128, 208 N.W.2d 331 (1973). Should a defendant make

in part and reversed in part the court of appeals' decision. That part of the court of appeals decision which set forth the legal standard by which the circuit court is to determine whether a recantation supports a motion to withdraw a plea following sentencing was affirmed. Our discussion which refers to *McCallum* refers to this court's decision unless otherwise explicitly stated.

this necessary showing, the court should permit the defendant to withdraw his or her plea unless the prosecution has been substantially prejudiced.[5] *State v. Garcia*, 192 Wis. 2d 845, 861, 532 N.W.2d 111 (1995). While the circuit court is to apply this test liberally, the defendant is not entitled to an automatic withdrawal. *See id.*; *State v. Canedy*, 161 Wis. 2d 565, 582, 469 N.W.2d 163 (1991).

¶ 27. As for the practical application of the test, this court has held that a " 'fair and just reason' " contemplates the " 'mere showing of some adequate reason for defendant's change of heart.' " *Canedy*, 161 Wis. 2d at 583. Whether a defendant's reason adequately explains his or her change of heart is up to the discretion of the circuit court. *Id.* at 584. A circuit court's decision with respect to this discretionary ruling will not be upset on review unless it was erroneously exercised. *Id.* A reviewing court will uphold a discretionary decision on appeal if the circuit court reached a reasonable conclusion based on the proper legal standard and a logical interpretation of the facts. *State v. Salentine*, 206 Wis. 2d 419, 429–30, 557 N.W.2d 439 (Ct. App. 1996).

¶ 28. On appeal, Kivioja argues that the circuit court erred both in requiring him to provide corroboration of the recantation and for considering whether a reasonable jury would believe Stehle's recantation. In holding the defendant to these requirements, Kivioja argues, the circuit court erroneously exercised its discretion because it applied the wrong legal standard to its analysis of his motion.

---

[5] The State has not argued that it was prejudiced and we do not address this point.

¶ 29. Kivioja further argues that a defendant need provide the circuit court with only a fair and just reason for withdrawal, and believes further that a fair and just reason is provided when the defendant offers any "plausible" reason. Under this test, Kivioja argues that Stehle's recantation, which was Stehle's only statement under oath, is "plausible," and, therefore, a fair and just reason entitling him to withdraw his plea.

¶ 30. The State concedes that a defendant need not show that the recantation is corroborated by other evidence, nor that a reasonable jury would believe the recantation. However, it disagrees with the defendant that a recantation without more is, *per se,* a fair and just reason for withdrawals. Instead, the State argues that the inherent unreliability of a recantation demands that it be supported by some reasonable indicia of reliability before it can be considered fair and just.

¶ 31. At the outset, we agree with both parties that when a motion is supported by a recantation, a defendant need show neither corroboration of the recantation nor that a reasonable jury would believe the recantation. This first requirement was established in *McCallum* and is applicable only when a defendant seeks to withdraw a plea following sentencing. *See McCallum*, 208 Wis. 2d at 473–474. This second "requirement" is an incorrect statement of the requirement in *McCallum* that, correctly stated, requires that a defendant show that there is a reasonable probability that a jury, looking at both the accusation and the recantation, would have a reasonable doubt as to the defendant's guilt. *Id.* at 468. This requirement also is one which is applicable only when a defendant moves to withdraw a plea after sentencing.

¶ 32.   In *McCallum,* this court set forth the test a circuit court should apply in assessing whether a defendant was entitled to withdraw a plea following sentencing when his or her motion was supported with new evidence in the form of a recantation. We first acknowledged that following sentencing, a defendant shouldered a significant burden of establishing by clear and convincing evidence that he or she is entitled to withdraw the plea only if doing so is necessary to correct a "manifest injustice." *McCallum,* 208 Wis. 2d at 473. We then explained that for new evidence to support a claim that a new trial was necessary to avoid a manifest injustice, that

> [f]irst, the defendant must prove, by clear and convincing evidence, that: (1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative. If the defendant proves these four criteria by clear and convincing evidence, the circuit court must determine whether a reasonable probability exists that a different result would be reached in a trial. Finally, when the newly discovered evidence is a witness's recantation, we have stated that the recantation must be corroborated by other newly discovered evidence. *Zillmer v. State,* 39 Wis. 2d 607, 616, 159 N.W.2d 669 (1968).

*Id.* at 473–74.

¶ 33.   Manifest in the decision of the circuit court is its belief that Kivioja needed to satisfy the latter two requirements of *McCallum.* However, in holding the defendant to that standard, it placed too substantial a burden upon the defendant.

¶ 34.   We previously have held that the burden a defendant faces when moving to withdraw his or her plea varies substantially with the timing of the motion. It should be easier for a defendant to withdraw a plea before sentencing than after. *Libke*, 60 Wis. 2d at 124. When a defendant moves to withdraw his or her plea prior to sentencing, the circuit court is to look only for a fair and just reason and freely allow the withdrawal. *Canedy*, 161 Wis. 2d at 582–83. However, a defendant is held to a much more difficult burden when requesting a plea withdrawal following sentencing, when he or she is required to establish by clear and convincing evidence that the withdrawal is necessary to avoid a manifest injustice. *Libke*, 60 Wis. 2d at 124–128. Because Kivioja merely needed to meet the fair and just reason standard, the circuit court erred in holding him to the manifest injustice standard articulated in *McCallum*.

¶ 35.   While we find that the circuit court applied the wrong legal standard to the facts of this case, we will not reverse its erroneous exercise of discretion where we find that the facts of the record applied to the proper legal standard support its conclusion. *In re Paternity of Stephanie R.N.*, 174 Wis. 2d 745, 767, 498 N.W.2d 235 (1993).

¶ 36.   While Kivioja argues that the circuit court applied the wrong legal standard to his motion by relying upon *McCallum*, his focus is primarily on the credibility assessment that the court engaged in when considering Stehle's recantation. The defendant believes that a circuit court is precluded from considering the credibility of evidence a defendant offers in support of a motion to withdraw a plea prior to sentencing. As support for this proposition, he points to *State v.*

287

*Shanks*, 152 Wis. 2d 284, 448 N.W.2d 264 (Ct. App. 1989), a decision in which the court of appeals reversed a circuit court order denying a defendant's plea withdrawal because the court of appeals found that "[f]air and just reasons, made plausible by the record, were offered in support" of the defendant's motion. *Shanks*, 152 Wis. 2d at 292. Kivioja is emboldened by the court of appeals' use of the term "plausible," which he believes precludes the circuit court from considering the credibility of the evidence offered in support of a motion to withdraw. As we understand his argument, "plausible" evidence and "credible" evidence may be mutually exclusive—or at the least, a requirement to bring forward "plausible" evidence is a lesser threshold than a requirement to bring forward "credible" evidence.

¶ 37. The defendant is in error for no other reason than that the term "plausible" is not as unrelated to the term "credible" as he believes. The words are, in fact, synonymous terms, and are interchangeable in the context in which the court of appeals used the term in *Shanks*.

¶ 38. First, as a practical matter, we note that the definition of plausible as found within the American Heritage Dictionary of the English Language, (3d ed., 1992), equates the two terms:

> Plausible: 1. Seemingly or apparently valid, likely, or acceptable; credible: *a plausible excuse.*

*Id.* at 1388. It further provides that the word "plausible" is synonymous with "credible", as well as the terms "believable" and "colorable":

> The central meaning shared by these adjectives is 'appearing to merit belief or acceptance.': *a plausi-*

*ble pretext; a believable excuse; a colorable explanation; a credible assertion.*

*Id.* For the purpose of providing evidence in support of a motion to withdraw a plea, we discern no difference between requiring a defendant to bring forward plausible evidence and one requiring a defendant to bring forward credible evidence. Regardless of the term used, a defendant must bring forward evidence that the circuit court finds believable, without which any reason offered in support of withdrawal would not be fair and just.

¶ 39.   Second, the court of appeals' reasoning in *Shanks* does not support the defendant's position that a circuit court is precluded from evaluating the credibility of the defendant's proffered reason for plea withdrawal. In writing that some courts have suggested that a fair and just reason must be plausible, the court of appeals cited *United States v. Navarro-Flores*, 628 F.2d 1178, 1183 (9th Cir. 1980). Far from precluding a credibility assessment, the court in *Navarro-Flores* explicitly embraced such an assessment, writing that "[i]n determining whether [the defendant] presented a *plausible* reason to support his motion, the weight to be given the evidence and *the credibility of the witnesses* 'is primarily a matter entrusted to the district court.' " *Navarro-Flores*, 628 F.2d at 1183–84 (citing *United States v. Webster*, 468 F.2d 769, 771–72 (9th Cir. 1972))(emphasis supplied).

¶ 40.   Third, this court has consistently accepted circuit court evaluations of the credibility of evidence when they consider plea withdrawals. As early as our decision in *Libke*, Justice Robert W. Hansen, in a concurring opinion, expressed the view that an evidentiary hearing on whether a defendant has presented a fair and just reason for a plea withdrawal is necessary to

resolve "issues of fact and *credibility*." *Libke*, 60 Wis. 2d at 130 (R. Hansen, J., concurring) (emphasis supplied). We have recognized a circuit court's credibility assessment in numerous cases since.

¶ 41.   In *Canedy*, 161 Wis. 2d 565, for instance, we upheld the circuit court's denial of a motion to withdraw a plea based upon the defendant's assertion that he did not understand the plea because "the court *did not believe* [the defendant's] asserted reasons for withdrawal of the plea, and therefore did not think they were fair and just." *Id.* at 585 (emphasis supplied). We wrote further that

> the circuit court in the case before us did not believe Canedy's contention that he misunderstood the meaning of 'depraved mind' when he entered the plea. The court was of the opinion that the record did not support such a contention. Canedy's counsel admits in his brief to this court that 'had the trial court in this case denied the defendant's motion on the grounds that he found the defendant's testimony incredible or otherwise unbelievable it is unlikely this appeal would ever have been brought.' [citation omitted] In the case before us it is obvious from the record that the circuit judge did not believe that Canedy did not understand the charge to which he pled guilty.

*Id.* at 585–86.

¶ 42.   In *Dudrey v. State*, 74 Wis. 2d 480, 247 N.W.2d 105 (1976), a review of a circuit court's denial of defendant's motion based upon his claim that he did not understand his plea, this court accepted the circuit court's conclusion that "the defendant fully understood the nature of the negotiated plea and the nature of the proceedings at [the] time [of his plea]." *Id.* at 483. We held that the circuit court did not apply an incorrect

standard in denying the defendant's motion to withdraw his plea when it "obviously *disbelieved* defendant's contention, and in effect found that no reason was offered for withdrawal of the guilty plea." *Id.* (emphasis supplied). And in *Garcia*, we reaffirmed our holding in *Canedy* that "if the circuit court *does not believe* the defendant's asserted reasons for withdrawal of the plea, there is no fair and just reason to allow withdrawal of the plea." *Garcia*, 192 Wis. 2d at 863 (emphasis supplied).

¶ 43. These cases are evidence that credibility assessments are crucial to a determination of whether the evidence offered is a fair and just reason supporting withdrawal and they are consistent with the requirement that the defendant must do more than allege or assert a fair and just reason, that he or she must also show that the reason actually exists. *See e.g., Canedy*, 161 Wis. 2d at 585 ("a misunderstanding of the consequences of a guilty plea is grounds for withdrawal, but the misunderstanding must actually exist"). In order to assess whether a reason actually exists, the circuit court must engage in some credibility determination of the proffered reason, without which withdrawal would be automatic, a matter of right.

¶ 44. For instance, Wisconsin courts have held that "misunderstanding" a plea is a fair and just reason for withdrawal. *Dudrey*, 74 Wis. 2d at 485; *Shanks*, 152 Wis. 2d at 266. However, it does not follow that any time that a defendant asserts that he or she misunderstood the plea, he or she is entitled to withdrawal. The misunderstanding must be genuine. Our case law establishes that not all defendants who *state* that they did not earlier understand their plea are *entitled* to withdraw their pleas. *See Canedy*, 161 Wis. 2d at 585; *Garcia*, 192 Wis. 2d at 862. Because the reason offered

291

must be genuine, the circuit court must determine whether the defendant's reason is credible or plausible or believable.

¶ 45. Identifying recantation evidence as inherently unreliable, the State asks that we adopt a test with which circuit courts could assess the reliability of recantation in a manner that is more structured than the assessment of credibility engaged in by the circuit courts in those cases where a defendant alleges a misunderstanding of the plea. Whether recantation evidence ought to be treated in a manner different than other evidence a defendant offers as a fair and just reason for withdrawal is an issue of first impression.

¶ 46. The State's position that recantation evidence, due to its unreliability, presents circuit courts with special difficulties when deciding motions to withdraw pleas is not without precedent. In *McCallum*, this court observed that a recantation does present special circumstances requiring the circuit court to indulge in a greater degree of inquiry than it would for other forms of new evidence used in support of a defendant's motion for a post-sentence plea withdrawal. A recantation, we wrote, was inherently unreliable. *McCallum*, 208 Wis. 2d at 476 (citing *Dunlavy*, 21 Wis. 2d at 114). We found the genesis of this conclusion in those cases in which a witness, under oath, recanted an earlier sworn statement, thus admitting to perjury. *See e.g., Dunlavy*, 21 Wis. 2d at 114; *Loucheine v. Strouse*, 49 Wis. 623, 6 N.W. 360 (1880). In *Loucheine*, which considered a recantation in the context of a motion for a new trial, we explained our view that

> [t]he evidence of this witness on another trial, in contradiction of his evidence on the same point on the original trial, would be entirely unreliable and

not entitled to any weight without corroboration by some credible evidence also newly discovered, and would not, of itself alone, amount to newly-discovered testimony.

*Loucheine*, 49 Wis. at 624 (footnote omitted). Our decision in *McCallum* reaffirmed this conclusion that due to its inherent unreliability, recantation testimony must be corroborated by other newly discovered evidence, without which it would not be sufficient reason to find the manifest injustice required to permit a defendant to withdraw a plea following his or her sentencing. *McCallum*, 208 Wis. 2d at 476.

¶ 47. Given the unreliability of recantation, the State has proposed tailoring the test articulated in *McCallum* to motions made before sentencing. The defendant argues that the test articulated in *McCallum* ought not be followed in the instant case for two reasons, distinguishing that case from the facts here. First, *McCallum* concerned the much more difficult burden a defendant faces in a post-sentencing plea withdrawal. Second, unlike the witness in *McCallum* and the cases upon which it is based, Stehle's recantation is the *only* statement that he has made under oath, and by providing the recantation, Stehle has *not* perjured himself.

¶ 48. As our discussion above makes clear, we are in agreement with the defendant that the heightened burden a defendant faces under *McCallum* makes an unmodified application of that case to a presentence plea withdrawal involving recantation testimony much too burdensome and inconsistent with our precedent that has clearly drawn a distinction between a defendant's burden before sentencing and after sentencing. However, we disagree with the defendant that a recantation is *only* unreliable when both the earlier and the

293

later statements are made under oath. The court of appeals in *State v. Mayo*, 217 Wis. 2d 217, 579 N.W.2d 768 (Ct. App. 1998), facing the reverse of what we face here, namely a recantation not made under oath following earlier trial testimony, found that despite the fact that the conflicting statements were not both made under oath, questions of credibility were still unanswered. *Id.* at 229. We find that the fact that Stehle may not have perjured himself when he testified at Kivioja's motion hearing cannot establish, *per se*, that his second statement, made under oath, is credible.

¶ 49. The application of a modified *McCallum* test to plea withdrawals prior to sentencing will help circuit courts determine whether a recantation is worthy of belief and therefore a fair and just reason for withdrawal. Such a test as described immediately below will preserve the liberal, though not automatic, application of the fair and just reason test appropriate to such motions, while at the same time providing a framework in which a circuit court can assure the reliability of otherwise inherently unreliable recantation evidence.

¶ 50. New evidence should constitute a fair and just reason where the defendant shows by a preponderance of the evidence that (1) the evidence was discovered after entry of the plea; (2) the defendant was not negligent in seeking the evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative. These first four requirements will not unduly burden a defendant offering recantation evidence as a recantation by its nature generally satisfies these criteria. *See State v. Terrance*, 202 Wis. 2d 496, 501, 550 N.W.2d 445 (Ct. App. 1996). And when the new evidence is not recantation, holding

the defendant to these requirements is reasonable, for if the defendant knew of evidence prior to the entry of a plea, or was negligent in seeking the evidence, it would not be fair and just to allow him or her to withdraw a plea. Nor would it be fair and just to allow withdrawal where the evidence is not material and where it would be merely cumulative.

¶ 51. In addition to meeting these four criteria, when the newly discovered evidence is a witness's recantation as it is here, the circuit court must determine that the recantation has reasonable indicia of reliability.

¶ 52. The test we adopt differs from the more onerous *McCallum* test in significant ways. First, a defendant will be held to demonstrate a fair and just reason for withdrawal of a plea by a preponderance of the evidence, less demanding than the clear and convincing standard required of a similar motion made after sentencing. Second, a defendant need not show that there is a reasonable probability of a different result at trial. Third, a defendant will not need to show other new evidence that corroborates the recantation. In place of this last requirement found in *McCallum*, under the test we articulate here, the defendant will be held to the lesser showing that the recantation has reasonable indicia of reliability—that is, that the recantation is worthy of belief. Should the court find that the first four criteria are met, and that the recantation is worthy of belief, the defendant will have provided a sufficient fair and just reason for withdrawal.

¶ 53. The application of this modified *McCallum* test is justified prior to sentencing because the credibility and the reliability of recantation evidence is crucial to a determination of whether the fair and just reason

offered by the defendant actually exists. Regardless of when recantation is offered, its inherent unreliability is static. If a recantation could be found unreliable after sentencing, we do not believe that that same recantation, equally unreliable if offered prior to sentencing, should entitle the defendant resting his or her motion solely on that recantation to plea withdrawal.

¶ 54. Therefore, the circuit court must properly determine whether the recantation is credible, worthy of belief. *McCallum*, 208 Wis. 2d at 487 (Abrahamson, C.J. concurring). The circuit court is to determine "whether [the witness] is worthy of belief, whether he or she is within the realm of believability, whether the recantation has any indicia of credibility persuasive to a reasonable juror if presented at a [ ] trial." *Id.* Of course, should the circuit court find that the recantation is *incredible* or not worthy of belief, it may deny the defendant's motion to withdraw. *See McCallum*, 208 Wis. 2d at 487 (Abrahamson, C.J., concurring). However, if a reasonable jury could believe the recantation, then the defendant is entitled to withdraw his or her plea, for the defendant does not have the added burden of showing that a reasonable jury would have a reasonable doubt about the defendant's guilt, as is required when a motion is made after sentencing.

¶ 55. A circuit court may be guided in its evaluation of the reliability of a statement by looking to that which we have stated in other contexts are assurances of trustworthiness. *See State v. Brown*, 96 Wis. 2d 238, 245, 291 N.W.2d 528 (1980). Assurances of trustworthiness can include the spontaneity of the statement, whether the statement is corroborated by other evidence in the case, the extent to which the statement is self-incriminatory and against the penal interest of the

declarant, and the declarant's availability to testify under oath and subject to cross-examination. *See Brown*, 96 Wis. 2d at 243–45. While no single factor is required, the presence of one or more may satisfy the circuit court that the recantation is reliable. On the other side of the equation, a factor that may undercut the reliability of a statement is evidence that the statement may be the product of coercion or duress, *see McCallum*, 208 Wis. 2d at 487 (Abrahamson, C.J., concurring), and a circuit court should give consideration to that possibility as well. Of course, these indicia that support or oppose a finding of reliability are not exclusive, and a circuit court may find assurances of trustworthiness in a host of places.

## IV

¶ 56.   We have the authority to apply the proper legal standard to the facts of this case to determine whether Kivioja is entitled to withdraw his plea. *Libke*, 60 Wis. 2d at 129. While we have at times declined to do so in favor of allowing the circuit court the opportunity to hold an evidentiary hearing on the basis that it alone is best-situated to observe the demeanor of the witnesses on issues that depend so heavily upon credibility, *see McCallum*, 208 Wis. 2d at 479–80, this is not such a case. Here, as opposed to the situation we faced in *McCallum*, the cold record does provide a reflection of the witness's demeanor and credibility through the statements of the circuit court. *See McCallum*, 208 Wis. 2d at 480.

¶ 57.   While the circuit court did not apply the test for assessing recantation evidence newly articulated here, we find that the circuit court's discussion that Stehle's statements show so many marked incon-

sistencies that his "reliability and credibility is seriously challenged" to be a finding that the recantation is incredible as a matter of law. Its written finding that "a reasonable jury would not believe the recanting statement of accomplice Jody Stehle" is also a finding that the recantation is incredible as a matter of law. While we agree with both parties that upon a motion to withdraw a plea prior to sentencing a defendant is not required to show that a reasonable jury would believe the recantation, the circuit court's decision that a jury would not believe the recantation is tantamount to a finding that the reason offered by the defendant is incredible. Such a finding is not inconsistent with either the lower burden a defendant faces upon his motion prior to sentencing, nor is it inconsistent with our holding in *McCallum*.

¶ 58. In *McCallum*, we held that the circuit court's conclusion that a recantation was less credible than an initial accusation did not necessarily lead to the conclusion that a reasonable jury could not have a reasonable doubt. *McCallum*, 208 Wis. 2d at 474–75. However, we stated that "[a] finding that the recantation is incredible necessarily leads to the conclusion that the recantation would not lead to a reasonable doubt in the minds of the jury." *Id.* at 474. This distinction is important and comes into play under the circumstances the circuit court was facing here. While Kivioja was not required to show that a jury would believe the recantation, he must be able to show that a jury could believe the recantation. This requirement does no more and no less than that which requires that the reason a defendant offers in support of a motion to withdraw a plea be believable. And as we have previously held, if the asserted reason offered by the defendant is not believable, the circuit court may in its

discretion deny the defendant's motion to withdraw a plea for the defendant's failure to present a fair and just reason. *See Canedy*, 161 Wis. 2d at 585.

¶ 59. Furthermore, while the circuit court judge did not look to any of the factors we have proposed above, our independent review of the record with an eye to those factors supports the circuit court's conclusion that Stehle's recantation does not constitute a fair and just reason to allow withdrawal of Kivioja's plea because it lacks reasonable indicia of reliability.

¶ 60. First, Stehle gave a statement "clearing" Kivioja only after Stehle received what he considered to be an extremely harsh sentence in light of his earlier willingness to cooperate with the police. Having received a lengthy sentence, Stehle expressed his anger with the police when he made his decision to recant. The timing of Stehle's recantation, coming only days after his sentence but nearly 16 months since he first told officers of Kivioja's involvement in the crimes, seriously depreciates the statement's reliability.

¶ 61. Second, Stehle's recantation was not corroborated by any other new evidence in the case. While corroboration is not necessary to a finding that a recantation is reliable, it may serve to establish reliability, particularly in the absence of any other assurances of trustworthiness. Stehle did testify that he had a motive for accusing Kivioja—the fact that Kivioja gave officers Stehle's real name which led directly to Stehle's arrest. Stehle also testified that the police were to make things easier on him if he would implicate Kivioja. Relying on *McCallum*, defendant argues that Stehle's motives to falsely accuse defendant provides some evidence of internal corroboration for the recantation.

¶ 62. However, Stehle's professed motives do not provide internal corroboration where, as here, his statement lacks other circumstantial guarantees of trustworthiness. In *McCallum*, we held that "corroboration requirement in a recantation case is met if: (1) there is a feasible motive for the initial false statement; *and* (2) there are circumstantial guarantees of the trustworthiness of the recantation." *McCallum*, 208 Wis. 2d at 477–78. That is, internal corroboration alone will not suffice if there are no other circumstantial guarantees of trustworthiness.

¶ 63. In particular, as the circuit court noted, the varied stories in the circumstances surrounding the May 9, 1995, crime is damning to Stehle's testimony as a whole. In his first statement to the police, Stehle confessed to his involvement in all of the burglaries with which Kivioja was charged except the one on May 9, 1995. In his recantation letter, Stehle wrote that, in fact, Kivioja did not commit the May 9, 1995, burglary and that he himself was not in jail on that date. Stehle denied his own involvement in the crime, and explained that an unnamed third person who he happened to meet on the day of the burglary actually committed the burglary. Stehle wrote then that he would not disclose the name of this third person unless he would be released immediately from prison and not be placed on parole. Stehle provided yet a third version of this crime at Kivioja's motion for withdrawal of his plea when he explained that he himself, alone, had committed the crime. However, he was not able to explain how the six $100 bills that were stolen came into Kivioja's possession, nor could he explain why or how he had attributed the burglary to yet a third party when he did so in his recantation letter. His varied stories are evidence of the internal *inconsistency* of

Stehle's recantation that leads to the conclusion that his recantation is incredible.

¶ 64. Third, Stehle's recantation does not bear the assurance of reliability that accompanies a statement against the penal interest of the declarant as it would if he had made both this and the earlier statement under oath. Where conflicting statements are made under oath, the second statement serves as an admittance of perjury. Having made both statements, the declarant has, in fact, perjured him or herself. Stehle's statement is not against his penal interest.

¶ 65. We do note the presence of a single indicium of reliability, and that is that Stehle's recantation was given under oath. However, as we stated above, this single indicia, in and of itself, lends little reliability to the recantation. Either Stehle's original accusation or his recantation is false, and the fact that one was made under oath does not get us nearer to the answer of whether the latter statement is reliable.

¶ 66. Our independent review of the record demonstrates that Stehle's recantation lacks reasonable indicia of reliability without which it does not constitute a fair and just reason to allow Kivioja's presentence plea withdrawal:

*By the Court.*—The order of the circuit court for Fond du Lac County is affirmed.

¶ 67. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (*dissenting*). I agree with the majority opinion that the circuit court erred as a matter of law in holding that the defendant must prove that a reasonable jury would believe the recantation and that the recantation must be corroborated. Because of these errors of law, I would reverse the order of the circuit

301

court and remand the cause to the circuit court to exercise its discretion under the standard I set forth below.

¶ 68.   The law governing withdrawal of a guilty or no-contest plea before sentencing is easy to state. First, a defendant does not have an absolute right to withdraw a plea before imposition of sentence. A plea is not a meaningless formality when the circuit court makes a full inquiry into the circumstances of the plea. Second, a circuit court should nevertheless allow a defendant to withdraw a plea before sentencing for "any fair and just reason" unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea.[1] Third, granting or denying the motion to withdraw the plea rests within the sound discretion of the circuit court.

¶ 69.   The law governing withdrawal of a guilty or no-contest plea before sentencing is, however, not so easy to apply. The "any fair and just reason" standard "lack[s] any pretense of scientific exactness." *United States v. Barker*, 514 F.2d 208, 220 (D.C. Cir.) (en banc), *cert. denied*, 421 U.S. 1013 (1975). Appellate decisions of state and federal courts give meaning to this standard.

¶ 70.   The court of appeals certified the present case to this court because it perceived inconsistencies in certain Wisconsin appellate decisions interpreting and applying the "any fair and just reason" standard. The majority opinion does not, I conclude, resolve these perceived inconsistencies.

---

[1] *State v. Canedy*, 161 Wis. 2d 565, 579–584, 469 N.W.2d 163 (1991). The "any fair and just reason" test is set forth in the *ABA Standards for Criminal Justice—Pleas of Guilty*, Standard 14–2.1 (1980) and in Rule 32(e), Federal Rules of Criminal Procedure. *See* Charles Alan Wright, 3 *Federal Practice and Procedure, Criminal 2d*, Rule 32 (1998 Pocket Part).

¶ 71. In its certification memorandum, the court of appeals asked this court "whether the plausibility approach of *Shanks*,[2] which precludes a credibility assessment, is the correct law in light of *Canedy*,[3] which permits such an assessment of defendant's testimony in a presentence setting, and *McCallum*,[4] which contemplates an assessment of a recanter's testimony in a postsentence setting."

¶ 72. The majority opinion does not, in my view, clearly distinguish between and describe the applicability of the standards of plausibility and credibility. Similarly, the majority opinion fails to explain adequately the basis for the distinction it makes between the corroboration of recantation testimony and the reliability of recantation testimony.

¶ 73. Moreover, the majority opinion today departs from Wisconsin's tradition of applying federal case law to determine grounds for plea withdrawals[5] and adopts a new four-part test used for motions for a new trial on the basis of newly discovered evidence.[6] The majority opinion is not clear about the relation of this new test to the rules set forth in our prior cases. Also, I doubt that a test applicable to vacating a guilty verdict on the basis of new evidence should be a principal test to be applied to withdrawing a plea before sentencing. The rationale for allowing a verdict to be

---

[2] *State v. Shanks*, 152 Wis. 2d 284, 448 N.W.2d 264 (Ct. App. 1989).

[3] *Canedy*, 161 Wis. 2d 565.

[4] *State v. McCallum*, 208 Wis. 2d 463, 561 N.W.2d 707 (1997).

[5] *See Canedy*, 161 Wis. 2d at 582–83.

[6] For the test applicable to motions for a new trial, see *State v. Terrance*, 202 Wis. 2d 496, 501, 550 N.W.2d 445 (Ct. App. 1996).

vacated after trial is different from the rationale for allowing the withdrawal of a plea that has waived the defendant's right to trial.

¶ 74.   In a motion to withdraw a guilty or no-contest plea before sentencing I would apply the following test: The circuit court should determine, as a matter of law, whether the recanter's testimony is worthy of belief by the jury. The circuit court should not determine whether the recantation is true or false. Instead, it should merely determine whether the testimony of the recanting witness has any indicia of credibility that would be persuasive to a reasonable juror if the testimony were presented at trial. *Cf. State v. McCallum*, 208 Wis. 2d 463, 487, 561 N.W.2d 707 (1997) (Abrahamson, C.J., concurring). In my view, this assessment of a recanter's testimony should be identical to a circuit court's assessment of a witness's testimony at a preliminary hearing.

¶ 75.   I would remand the cause to the circuit court to determine whether, under the test I have set forth above, there is any fair and just reason to allow withdrawal of the no-contest plea in the present case.

¶ 76.   For these reasons, I dissent.

¶ 77.   I am authorized to state that JUSTICE ANN WALSH BRADLEY joins this dissent.